SIMPSON *v.* REINMAN.

Opinion delivered December 13, 1920.

1. ACTION—PROCEEDINGS IN REM AND QUASI IN REM DISTINGUISHED.—A proceeding *"in rem"* is a proceeding against the property, while a proceeding *"quasi in rem"* is a proceeding against a person in respect to the property.

2. TAXATION—VALIDITY OF TAX SALES.—Tax sales are made exclusively under statutory power, and, in order to divest the owner

of his property, every substantial requisite of the statute must be complied with.

3. HIGHWAYS—COLLECTION OF ASSESSMENTS—PROCEEDING QUASI IN REM.—Under Acts 1909, p. 1163, § 20, providing that proceedings to enforce road district assessments shall be in the nature of proceedings *in rem*, and it shall be immaterial that the ownership of lands proceeded against be incorrectly alleged in said proceedings, and that notice of said proceedings shall be given to the "supposed" owner by publication, "each supposed owner having been set opposite his, her, or its property," etc., *held* that a proceeding and judgment against a "supposed owner" who had and claimed no interest in the land was not binding on the true owner of the land, who was not named, and was in actual possession of the land by a tenant.

4. HIGHWAYS—COLLECTION OF ASSESSMENTS—DESIGNATION OF SUPPOSED OWNER.—Under Acts 1909, p. 1163, § 20, requiring the commissioners to give notice by publication to the "supposed owner" of delinquent land of a proceeding to collect delinquent assessments, the statute is not complied with by naming as "supposed owner" a person having no claim of interest in the land, where such land was in the actual possession of the true owner, or his tenant.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

### STATEMENT OF FACTS.

George G. Worthen, Louis Reinman and Louis Wolfort brought an action of unlawful detainer in the circuit court against Tillman Green to recover possession of about ninety acres of land.

Dr. R. A. Simpson filed what he calls an "intervention" in which he states that he is the owner and in possession of the lands involved in this suit; that the plainties are claiming title by virtue of a tax deed issued to them by a commissioner under proceedings by a road district to foreclose the lien for unpaid road taxes. It is alleged that the lands are worth $5,000, and that they were purchased at the tax foreclosure proceedings for the sum of $112. Other allegations of the intervention will appear in the statement of facts.

The prayer of the intervener is that he be made a party to the suit; that the cause be transferred to equity;

that the tax deed be canceled, and that the interest of the plaintiffs be divested out of them, and that the title to the land be forever quieted in him.

Without objection, the cause was transferred to equity and heard upon substantially the following facts: The lands in question comprise about ninety acres and are situated on the banks of the Arkansas River in Pulaski County, Arkansas, within the boundaries of Road Improvement District No. 3 of Pulaski County, Arkansas. On August 25, 1913, Improvement District No. 3 of Pulaski County filed a proceeding under the statute for the collection of the delinquent road taxes due on the lands. In the complaint filed in the action in the Pulaski Chancery Court, the lands involved in this action are described and the style of the suit is against the lands to collect the delinquent taxes and A. E. Adams, "ostensible owner," is also made defendant. The body of the complaint also describes the lands in controversy, and alleges that one A. E. Adams is the ostensible owner of them. The complaint alleges that no part of the road taxes for the years 1910, 1911 and 1912 had been paid. For the years 1910 and 1911, the taxes are $22.25 for each year and $11.13 for the year 1912, making a total of $69.54 as the amount of the unpaid taxes for the three years.

The notice with regard to the suit was published in the Argenta Times, a weekly newspaper published in North Little Rock, or Argenta as it was then called, in Pulaski County, Arkansas. The first publication was made on the 30th day of September, 1913, the publication being inserted weekly for four consecutive weeks. The notice is in the form prescribed by the statute. A decree of foreclosure for the unpaid taxes was entered of record in the chancery court on the 21st day of October, 1913, and a commissioner was appointed to sell the lands in satisfaction of the unpaid taxes and costs unless payment was made within thirty days from the date of the decree. The lands were duly advertised and sold by the

commissioner to George G. Worthen, Louis Reinman and Louis Wolfort for the sum of $112.75. The sale was duly confirmed by the court, and a commissioner's deed was executed to the purchasers under orders of the court.

The present suit was instituted on January 4, 1917. Tillman Green first rented the land for the year 1912, from J. C. Budd, who then owned it. On the 1st day of January, 1913, Tillman Green entered into a written lease with J. C. Budd for the lands for five years for $250 for the first year and $300 for each subsequent year. Green went into possession of the lands under this lease and was in possession of them at the time plaintiffs commenced suit against him for the possession of the lands. Subsequently the lands were sold in an attachment proceeding against J. C. Budd. Dr. R. A. Simpson became the purchaser at the sale. Subsequently J. C. Budd executed to him a quitclaim deed for said lands. Doctor Simpson has owned and been in possession of the lands through his tenant, Tillman Green, ever since he purchased them. At the time the tax proceedings above set forth were had, J. C. Budd had the legal title to the lands, and was in possession of them through his tenant, Tillman Green.

R. A. Simpson tendered to the plaintiffs the amount of taxes, penalties and costs due upon the lands, being the amount paid by them in the purchase of the lands.

The chancellor found the issues in favor of the plaintiffs, and the intervention of Dr. R. A. Simpson was dismissed for want of equity. To reverse that decree, R. A. Simpson has duly prosecuted an appeal to this court.

*S. W. Leslie*, for appellant.

1. The proceedings on which plaintiffs base their title and ownership are so defective and irregular as to make the commissioner's deed based thereon void. The name of the defendant is not given in the caption of the complaint and only forty acres of land is given in the caption as defendant and A. E. Adams is given as the

ostensible owner, not the supposed owner, and the land
is given as in Pulaski County, Arkansas.  In the body
of the complaint, and in all subsequent proceedings, all
that part of the land attempted to be described as in the
southeast quarter of section 36 is described as "frac-
tional north part fractional southwest quarter and south-
east quarter (fractional) of section 36.  In the publica-
tion of the notice upon which the court must base juris-
diction there is no attempt to notify  any defendant
given in the complaint.  No owner, ostensible or sup-
posed, is given.  The notice is only directed to "De-
linquent Lands."  The description is unintelligible.  It
was alleged and shown at the trial that A. E. Adams
had parted with his title to said lands and that J. C.
Budd was the owner.  Act 502, Acts 1909, provides that
the notice and proceedings must be against the supposed
owner of the lands.  This proceeding is not against the
supposed owner but the ostensible owner.  This act of
1909 is a special act and should be construed as such
and in contravention of article 5 of the amendment to
the Constitution of the United States and of the Consti-
tution of Arkansas.  Any process is not "due process of
law."  96 U. S. 97, 620.  Section 21 of the act provides
that neither an attorney *ad litem* or guardian *ad litem*
shall be appointed, nor any other provision of Kirby's
Digest, § 5164, shall be required.  An attorney *ad litem*
is very important and more effectual than the publica-
tion.  The question as to due process of law was raised
or passed upon in 74 Ark. 178.  Under the provision of
this act, while it is termed a proceeding *in rem,* it can
not be contended that it is a suit against land alone.
The process here was not directed against the owner,
the ostensible owner, the supposed owner or the owner
as appears of record.  74 Ark. 174, does not apply.
The description was fatally defective, and the special act
of 1909 should not be held to deprive a person of his
land without notice.  These irregular defective proceed-
ings should not be held to support the jurisdiction of the

courts. 118 Ark. 448; 124 *Id.* 278. Our statutes provide for notice to the owner of lands and he shall be made a defendant if known; if not known, that fact shall be stated in the complaint and the suit shall proceed *in rem.* Kirby's Digest, §§ 5691-6. Possession or occupation is sufficient to put on inquiry every person seeking adversary interest in the property and is constructive notice of such title as the occupant or possessor has. 16 Ark. 340; 90 *Id.* 149; 118 S. W. 414. Where the owner is known, a proceeding against the unknown owner avoids a rule thereunder. 58 Ala. 46.

2. Even if this is a collateral attack, the decision is wrong. Kirby's Dig., § 4431; 166 S. W. 250; 101 Ark. 142; 141 S. W. 501; 79 Ark. 289. The allegation and proof of the relation of landlord and tenant between plaintiff and Tillman Green must defeat plaintiff's action. 105 Ark. 630. The transfer to chancery does not dispense with this rule. Equity follows the law. Either in law or equity, the intervener is entitled to a decree. The offer to reimburse plaintiffs is more than fair.

*Reid, Burrow & McDonnell,* for appellees.

1. Act 402, Acts 1909, is constitutional, and the proceedings under which appellees acquired title were in accordance with the act. The lands were sufficiently described. 117 Ark. 151. The notice follows the act and is sufficient. 66 Ark. 422. If the description was defective, it was cured by the sale and confirmation. 90 Ark. 166. A decree in chancery can not be collaterally attacked for mere errors or irregularities. 118 Ark. 488. There is nothing in the contention concerning the words ''ostensible'' and ''supposed'' owner of the land. The act expressly provides that the proceedings shall be against the land shall be in the nature of a proceeding *in rem,* and it is immaterial if the ownership of the land is incorrectly alleged.

2. This act is constitutional. 74 Ark. 174; 4 Wallace (U. S.) 217; 187 U. S. 51; 193 *Id.* 79; 204 *Id.* 241. This is a collateral attack on a decree of a court of supe-

perior jurisdiction for mere errors or irregularities. 118 Ark. 449; 94 Ark. 588; 118 *Id.* 449; 124 *Id.* 278. These cases are conclusive against appellant's contentions.

HART, J. (after stating the facts). The decision of this case depends upon the construction of the statute under which the tax foreclosure proceedings were had. The Legislature of 1909 passed an act for the creation of road improvement districts. Acts of 1909, page 1151. Section 20 of the act provides that, if the taxes due on the assessments made are not paid within sixty days, a penalty of 25 per cent. shall attach for such delinquencies, and the board of directors shall enforce the collection thereof by proceedings in the chancery court of the proper county, and that the court shall give judgment against the lands for the amount of taxes, penalty and costs. The section continues as follows: "Said proceedings and judgment shall be in the nature of a proceeding *in rem,* and it shall be immaterial that the ownership of said lands be incorrectly alleged in said proceeding, and said judgment shall be enforced wholly against said lands and not against any other property of said defendant. All or any part of said delinquent lands or real property within the district may be included in one suit instituted for the collection of said delinquent taxes, penalty and costs, as aforesaid; and notice of the pendency of such suit shall be given by publication weekly for four weeks before a judgment is entered for the sale of said lands, in some newspaper published in the county of said district, which published notice may be in the following form:

"NOTICE.

Board of Directors of Road Improvement District No. ................ of the County of............................

vs.

Delinquent Lands.

"All persons, firms or corporations having or claiming any interest in any of the following described lands,

or real property, are hereby notified that suit is pending in the chancery court of............................ county, Arkansas, to enforce the collection of certain road improvement district taxes on the subjoined list of lands and real property, each supposed owner having been set opposite his, her or its property, together with the amount severally due from each, towit: (Then shall follow a list of supposed owners with a descriptive list of said delinquent lands and the amount due thereon respectively as aforesaid), and such published list may continue in the following form: All persons, firms and corporations, interested in the said property, are hereby notified that they are required by law to appear within four weeks and make defense to said suit, or the same will be taken for confessed, and final judgment will be entered directing the sale of said lands, for the purpose of collecting said taxes, together with all of the interest, penalty and costs allowed by law.''

It is contended that the decree of the chancellor should be upheld under the authority of *Cassady* v. *Norris,* 118 Ark. 449, which was followed in the subsequent case of *Cabell* v. *Board of Imp. of Imp. Dist. No. 10 of Texarkana,* 124 Ark. 278. In those cases the court had under consideration foreclosure proceedings by a board of commissioners of an improvement district in a city when section 5694 of Kirby's Digest was in force. That section says that the owner of the property assessed shall be made a defendant if he is known; if he is not known, that fact shall be stated in the complaint, and the suit shall proceed as a proceeding *in rem* against the property assessed. In each of those cases the owner of the property was in possession of it and had no knowledge that foreclosure proceedings had been instituted against his property for unpaid assessments. The owner did not even know that the improvement district had been formed and that his property was within its boundaries. The complaint in each case stated that the owner was unknown, and the general notice authorized by the statute in

proceedings of this kind was given. The court held that the suit was a proceeding *in rem,* and that the general notice required by the statute concluded the owner and that the purchaser at the sale under the statute acquired the legal title. It was there contended that the proceeding was a fraud on the court, and for that reason the decree should be set aside.

The court held that the allegations in the complaint that the owner was unknown were sufficient to give the court jurisdiction, and that, although the allegations were untrue, the court had the power to inquire into its own jurisdiction and to determine whether or not the allegation was true. The court then said that on collateral attack it must presume that the court made inquiry as to its jurisdiction to proceed against the property and found facts sufficient to justify its action.

We do not think the decision in *Cassady* v. *Norris, supra,* concludes the present case. When the complaint in that case alleged that the owner was unknown, the statute in express terms provided that the suit should proceed as a proceeding *in rem* against the property assessed, and the owner was concluded because the general notice required by the statute was given. The present statute is essentially different. It provides for notice against the "supposed owner" and provides that the action shall be in the nature of a proceeding *in rem.* That is to say, it is a proceeding *"quasi in rem."* A proceeding *in rem* has been defined to be a proceeding against the property, while a proceeding *quasi in rem* is a proceeding against the person in respect to the property.

Tax sales are made exclusively under statutory power, and in order to divest the owner of his property every substantial requisite of the statute must be complied with. On this question Judge Cooley said: "Defects in the conditions to a statutory authority can not be aided by the courts; if they have not been observed, the courts can not dispense with them, and thus bring into existence a power which the statute only permits

when the conditions have been fully complied with. Neither, as a general rule, can the courts aid the defective execution of a statutory power; they may do this when the power has been created by the owner himself, and when such action would presumptively be in furtherance of his purpose in creating it; but a statutory power must be executed according to the statutory directions, and presumptively any other execution is opposed to the legislative will, instead of in furtherance of it. It is therefore accepted as an axiom, when tax sales are under consideration, that a fundamental condition to their validity is that there should have been a substantial compliance with the law in all the proceedings of which the sale was the culmination. This would be the general rule in all cases in which a man is to be divested of his freehold by adversary proceedings; but special reasons make it peculiarly applicable to the case of tax sales.'' Cooley on Taxation (3 ed.), vol. 2, pp. 912-913.

As we have just seen, the statute requires the notice to be given to the supposed owner. The dictionary meaning of ''supposed'' is, ''accepted as true, or believed.'' Then the statute requires notice to be given to the person believed by the commissioners to be the owner. At the time the foreclosure proceedings were had by the commissioners in the chancery court A. E. Adams was named as the supposed owner. At that time J. C. Budd was the owner of the property and in possession of it. The property was a valuable farm of ninety acres situated on the bank of the Arkansas River and worth about $5,000.

We think the facts presented by the record bring the case within the rule announced in *Farmers & Merchants Bank* v. *Layson Lumber Co.,* 87 Ark. 607. In that case the commissioners of an improvement district in a city commenced proceedings against J. E. Eubanks as the owner of a lot to enforce the payment of the unpaid assessment. There was a sale of the property under the proceedings, and a deed was executed by the commissioner to the Farmers & Merchants Bank as the pur-

chaser at the sale, which was approved by the court. Eubanks did not own the lot at the time the foreclosure proceedings were had, but had conveyed it to another. The court held that the decree in the suit against Eubanks did not affect the owner of the lot and those holding under him, they not being parties to the suit, and the suit not being *in rem*. Therefore, it was held that a proceeding against Eubanks to collect an assessment of a local improvement district under Kirby's Digest, section 5694, is notice only to him, and that the decree affects only his interest in the lands, and that no one else is bound by it. It seems that the holding in that case applies here. As we have already seen, the foreclosure proceedings were under the statute. It will be borne in mind that the statute does not designate the suit to foreclose as a proceeding *in rem* as in the case of an unknown owner, but it in express terms provides that the proceedings and judgment shall be of the nature of a proceeding *in rem*. It further provides that notice shall be given to the "supposed owner."

Where the proceedings are strictly *in rem* under the statute, all persons who have an interest in the property are bound because the land itself is brought before the court. The reason is that no persons are made parties to the suit, but the land itself is brought before the courts, and its status ascertained. In cases where the owners, real or supposed, are made parties under the statute, no one else is concluded except the party who is made a party to the proceedings.

This brings us to the question of whether A. E. Adams could be sued as the "supposed owner." It is not shown that he ever had any title to the property or that he was in possession of it, or made any claim thereto at the time the foreclosure proceedings were had. J. C. Budd at that time had the paper title to the property and was in possession of it through his tenant. He was no more bound by proceedings against A. E. Adams as the "supposed owner" than the real owner was in the

case last referred to by the proceedings against Eubanks as owner, who had disposed of the property before the foreclosure proceedings were commenced. But it is claimed that such holding ignores that portion of the statute which provides that it shall be immaterial that the ownership of the lands be incorrectly alleged in the proceedings. We do not think so. If there had been any grounds for suing A. E. Adams as the supposed owner of the property, it would have been immaterial that his name was not correctly stated in the notice, or that he was not the actual owner of the property. It is true that the statute provides for a general notice to all persons interested in the property to appear within four weeks and make defense to the suit. But this does not make the suit strictly a proceeding *in rem,* so that all parties shall be bound by the proceedings. The reason is that the statute also provides that the "supposed owner" or the person believed to be the owner shall be a party to the proceedings. If the "supposed owner" is not made a party to the proceedings, then to take the property away from the owner without attempting to comply with this provision of the statute would be to deny him "due process of law." The proceeding did not comply with the statutory requirements, and for that reason does not constitute "due process of law" and therefore has no binding effect on Simpson, who has the record title by a quitclaim deed from Budd.

In *Gilbreath* v. *Teufel,* 15 N. Dak. 153, the Supreme Court of North Dakota held: "In an action to determine adverse claims to real property, although the proceedings may in all things comply in form with the provisions of the statute relative to the manner of obtaining jurisdiction, it is nevertheless an abuse of the statutory provisions, and is in effect a fraud upon the court and the adverse claimants to not disclose, and name as defendant, all adverse claimants whose names and places of residence could be readily ascertained."

In *Scales* v. *Wren,* 127 S. W. 164, the Supreme Court of Texas held that in a suit to quiet title where plaintiff's deed was on record, and gave his residence as in a certain county of the State, a judgment for taxes against the "unknown owner" did not conclude plaintiff's title, since he was entitled to service of citation if within the jurisdiction of the court, and, not being an unknown owner, he was not a party to the proceedings.

In *Evans* v. *Robberson,* 1 Am. St. Rep. 701, the Supreme Court of Missouri held that a tax sale, under the Missouri statute, in order to bind the interests of the owner, must show that he was made a party, if known, and, if not known, and not made a party, then his interest can only be affected by making the party appearing by the record to be the owner a party to the suit.

But it is insisted that these decisions should have not control because they are contrary to the decision in the case of *Cassady* v. *Norris, supra.* If they would hold that a proceeding under a state of facts similar to the one in the case at bar was not "due process of law" in a proceeding strictly *in rem,* and that therefore the owner was not concluded by the judgment, it is readily apparent that the decisions would apply with greater force in a case where service is required to be had against the real or supposed owner, and in the proceedings no attempt is made to serve such person, but a party who has no interest in the land whatever was designated as the "supposed owner," or the man believed to be the owner. The time for redemption in the statute under consideration was one year, and it is readily seen how that time would soon pass away and that the land owner who was not familiar with land numbers would be lulled to sleep by his lands being advertised as belonging to some one who had no interest in them, and in this way his farm, however valuable, would be sold to pay a small amount of improvement taxes, as was done in the case at bar.

We do not impute any bad faith in the matter to the commissioners. They had no authority to institute pro-

ceedings to sell the lands except under the statute. The statute required that the "supposed owner" be made a party to the proceedings. This the commissioners did not do, but instituted proceedings against another person whom the record shows had no interest whatever in the lands, and made no claim to them, and on that account made no defense to the action.

It follows that the chancery court erred in not setting aside the sale, as it was asked to do by the petition filed by the owner in the case. Such was the relief granted in the case of *Farmers & Merchants Bank* v. *Layson Lumber Co.,* 87 Ark. 607.

Therefore, the decree will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Hart, J. (on rehearing). It is earnestly insisted by counsel for appellee that the decision of the court is contrary to the principles of law decided in *Ballard* v. *Hunter,* 74 Ark. 174; *Pattison* v. *Smith,* 94 Ark. 588, and *Crittenden Lumber Co.* v. *McDougal,* 101 Ark. 390.

We do not agree with counsel in this contention. In each of those cases the court had under consideration the act of 1895, regulating the sale of lands for nonpayment of levee taxes in the St. Francis Levee District.

The statute under consideration required constructive notice to be given nonresidents of the county in which the lands were situated and to unknown owners, and for personal service upon residents of the county, and in all cases where the lands are occupied.

In each of the cases above recited the court was dealing with the lands of nonresidents which were not occupied. It is true that the notice required to be given them was essentially the same as the notice required under the present statute, but the question here presented for review was not discussed or decided in either of those cases.

In the first two cases the court held that it was not necessary to name the true owner, either in the complaint,

or in the notice, and that the decree entered upon such notice was not open to collateral attack by reason of the failure to name the true owner in the notice, or to make him a party to the suit.

In the last mentioned case the land in controversy was set out and described in the notice, with the supposed owner noted as Sweet Brothers. Personal service was also had upon Sweet Brothers as the supposed owners of the land. The court said that the mere fact that Sweet Brothers were noted as the supposed owners of the land would not alter the holding of the court, because, by the provisions of the statute, the proceeding is in the nature of a proceeding *in rem,* and that it is immaterial that the ownership of the land is incorrectly alleged in any of the proceedings.

It is claimed that this language is conclusive of the present case, and that it became immaterial that Adams was noted as the "supposed owner." The language used in any opinion must be construed with reference to the facts as well as the law under discussion. To make a tax sale valid, observance of every safeguard to the owner created by the statute is imperatively necessary, and it is generally held that a notice giving the name of the owner incorrectly invalidates the sale. *Marx* v. *Hanthorn,* 148 U. S. 172. In recognition of this rule, the Legislature provided that it should be immaterial that the ownership of the land should be incorrectly alleged in the proceedings. The object of the statute was to prevent the sale from being invalid, because the name of the owner of the land was incorrectly given in any of the proceedings. Sweet Brothers were noted as the supposed owners, both in the complaint and in the notice. Personal service was also had upon them by the commissioners. This indicated that the commissioners believed that they were the owners. The lands were wild and unoccupied, and there was nothing to put the commissioners on notice that Sweet Brothers were not the owners. Hence the court correctly held, under the facts of that case, that the sale was not invalid, because the ownership

of the land had been incorrectly alleged in the proceedings.

In the instant case the facts are essentially different, and we are asked by a refinement of reasoning to extend the rule there announced to cases where the ownership of the land was incorrectly alleged in the notice as the result of gross carelessness on the part of the commissioners, and the majority of the court declines to do so.

It has been well said that the well being of every community requires that the title to real estate shall be secure, and that no principle is more vital to the administration of justice than that no man shall be condemned in his person, or property, without notice and an opportunity to make his defense. Sales of land for the nonpayment of taxes are made in execution of statutory powers, and, to render them valid, there must be a rigid adherence to the directions and the forms of the statute.

This rule was recognized by this court in the case of *Van Etten* v. *Daugherty*, 83 Ark. 534. It was a proceeding for the collection of levee taxes under the St. Francis Levee Act as amended by the act of 1895, above referred to. In that case the court held that, if there is an occupant upon the land, a judgment against a delinquent taxpayer, based upon constructive service by publication, is void on collatreal attack where the defendant was a resident of the county, or where there was, at the time the notice was published, an occupant upon the land. The reason given was that the statute required personal service in such cases, and that the mode of obtaining jurisdiction prescribed by the statute must be strictly pursued. The court said that the proceedings derived their only sanction from the statute, and that the courts' must see that its provisions as to jurisdiction are complied with, or their judgment will be utterly void and subject to collateral attack.

Under the provisions of the present act there is no provision for personal service. The proceedings are upon constructive service, whether the owners are residents or nonresidents either of the county, or of the

State, and whether the lands are occupied, or unoccupied. The statute expressly declares that the proceedings shall be in the nature of a proceeding *in rem,* and that it is immaterial that the ownership of the lands shall be incorrectly alleged in the proceedings.

The statute also provides that the notice shall contain a description of the lands, together with a list of the supposed owners. The object of constructive notice is to put the owner in possession of such facts as will lead to actual notice and thereby enable him to make his defense. Hence the difference between a proceeding strictly *in rem* and a proceeding *quasi in rem,* or, what amounts to the same thing, a proceeding in the nature of a proceeding *in rem,* is vital. As we pointed out, there is a good reason for requiring the supposed owner to be named in the notice. If the former be named in the notice, there will be more likelihood of actual notice being received by the owner. The notice will inform him of what is alleged against him in the complaint. Hence the necessity for the commissioners, in good faith, to carry out the provisions of the statute.

As we have already seen, while the statute requires them to designate the supposed owners, it relieves them from the consequences of mistakes on their part by providing that a mistake in the allegations of the ownership of the land shall not be material. In other words, it does away with the rule that the giving of the name of the owner incorrectly invalidates the sale, but the Legislature did not intend to bind the owner where the commissioners named a person as the "supposed owner" whom they knew had no interest whatever in the land or when they acted with gross carelessness in the matter.

As pointed out in our original opinion, the use of the words, "supposed owner," was put in the statute for a useful purpose. It relieved the commissioners from deciding between adverse claimants and from going to unnecessary trouble to trace the title of the true owner, but the commissioners were not entirely relieved from responsibility in the matter. The "supposed

owner," according to the dictionary meaning, would be the person believed to the owner. Here the commissioners had charge of constructing the road. It was made their duty to supervise the assessment of benefits upon the lands within the district. The land in question was a valuable farm, and was occupied by its true owner through his tenant. The person who was designated as the "supposed owner" had no interest whatever in the land, and, so far as the record discloses, did not claim to have any.

Under the circumstances, the commissioners should be charged with knowledge that the land belonged to the person in possession of it, and were guilty of gross carelessness in naming another person as the "supposed owner."

Therefore, the commissioners did not comply with the statute with regard to the notice, and the owner is not bound by the proceedings, any more than he would be bound by a mistake with regard to his own name where the statute contained no provision that it should be immaterial that the ownership of the lands should be incorrectly stated in the proceedings. In short, a majority of the court is of the opinion that the designation by the commissioners, under the statute, of the person as the "supposed owner," whom by the exercise of the slightest care they could have known was not such owner, is not a compliance with the statute, and that notice to such person is not notice to the "supposed owner," or the person they believed to be the owner as required and the sale is therefore invalid.

The rule laid down in *Cassidy* v. *Norris,* 118 Ark. 449, is not applicable for the reason pointed out in the original opinion. There the proceeding was strictly *in rem,* and it was the duty of the court, as a prerequisite of the exercise of jurisdiction in the premises, to determine whether or not the owner was unknown.

Here the statute proceeds against the "supposed owner," and it is, therefore, a proceeding against a person in respect to the *res.* Therefore, as above stated, a

majority of the court is of the opinion that notice to one who is not the "supposed owner" is not the notice required by the statute. The owner would be no more bound by constructive notice under the circumstances than he would be bound by constructive services against the nonresident owner under the St. Francis Levee Act as amended by the Acts of 1895, where the lands of such nonresident were occupied.

This is not a case where there was a mistake in the ownership of the land alleged in the proceedings, but it is a case where the statute required the "supposed owner" to be constructively summoned, and some other person than the "supposed owner" was named in the notice. If the statute had required the proceedings to be against the person in whom the record title last appears, it could not be said that the owner of the land would be bound by a proceeding against some other person than the one in whom the record title last appears. So here, the statute requires the supposed owner to be named in the notice, and it is not a compliance with the statute to proceed against some other person. To sum up: the lands in question constitute a valuable farm which was in possession of the owner through his tenant at the time the proceedings were had; the duties of the commissioners required them to become familiar with the lands of the district, and they are charged with notice of the owner's possession. There is nothing in the record to show that they believed Adams to be the "supposed owner," and to hold the sale valid would be contrary to the principles of natural justice and the case is one manifestly calling for the interposition of a court of equity. The proceedings were not in compliance with the statute, and did not constitute in form, much less in spirit, due process of law.

It follows that the motion for rehearing will be denied.

McCulloch, C. J., and Smith, J., dissent.

McCulloch, C. J. (dissenting). The decision in this case is, it seems to me, of very great moment, for I think it is in conflict with many cases decided by this court which may have become established rules of property. The statute under which the proceedings relating to the sale of this property were maintained is identical, so far as affects the questions now under consideration, with the act of April 2, 1895 (Acts 1895, p. 88), prescribing the method of foreclosing the lien of the St. Francis Levee District for unpaid assessments on lands in that district. A comparison of the two statutes shows that the person who prepared the later statute which governs in the present case had the former statute before him and followed it almost word for word, except in certain particulars not important to notice in the present case.

The St. Francis Levee District statute provides, the same as this one, that the proceedings and judgment "shall be in the nature of proceedings *in rem,* and it shall be immaterial that the ownership of said lands may be incorrectly alleged in said proceeding, and such judgment shall be enforced wholly against said lands and not against any other property or estate of said defendant." It provides, the same as in the present statute, that in the published notice there shall be "a list of supposed owners with a descriptive list of said delinquent lands and the amounts due thereon respectively as aforseaid." In fact, there is no difference whatever between that statute and tlhe present one, so far as it affects the present case.

This court, in construing the statute in the case of *Ballard* v. *Hunter,* 74 Ark. 174, held that the fact that the owner, Mrs. Ballard, was not made a party defendant to the suit to enforce the collection of the taxes did not affect the validity of the decree and sale, and based its conclusion on the language of the statute which provided that the suit should be in the nature of proceedings *in rem,* and that "it shall be immaterial that the ownership of the lands may be incorrectly alleged in said proceedings." That decision has been directly followed by

this court in deciding other cases under that statute. *Pattison* v. *Smith,* 94 Ark. 588; *Crittenden Lumber Co.* v. *McDougal,* 101 Ark. 390. The last case cited is peculiarly applicable to the present case in view of the fact that the same mistake was made in that case as in the present case, the land being owned by the Crittenden Lumber Company, the appellant in that case, but was listed in the published notice in the proceedings and sold as the property of Sweet Brothers. This court held that that mistake was covered by the provision of the statute to the effect that "it shall be immaterial that the ownership of said lands be incorrectly alleged in said proceedings," and that the sale under which the decree was made was not open to collateral attack on that ground.

The case of *Ballard* v. *Hunter, supra,* was taken to the Supreme Court of the United States on a writ of error and the judgment was there affirmed. 204 U. S. 241. The Supreme Court of the United States in disposing of the case said: "The statutes of the State, under which the taxes were levied, virtually made the land a party to the suit to collect the taxes. It is from the lands alone, and not from their owner, that the taxes are to be satisfied, and each acre bears its part. The burden of taxation could have been easily and definitely assigned by the court. Mistakes in ascribing the ownership of the lands did not increase the taxation or cast that which should have been paid by one tract of land upon another tract."

Again that court said: "The complaint showed that Ballard was the owner of the lands, and that he was a nonresident of the county. It is said, however, that Josephine Ballard was not made a defendant in the suit, though the records of the county showed that she was an owner thereof. But the statute provided against such an omission. It provided that the proceedings and judgment should be in the nature of proceedings *in rem,* and that it should be immaterial that the ownership of the lands might be incorrectly alleged in the proceedings. We see no want of due process in that requirement, or

what was done under it. It is manifest that any criticism of either is answered by the cases we have cited. The proceedings were appropriate to the nature of the case.''

I am entirely unable to understand how the majority can treat the proceedings under this statute as being ''against the person in respect to the property'' in the face of the statute which expressly provides that ''it shall be immaterial that the ownership of said lands may be incorrectly alleged in said proceedings, and such judgment shall be enforced wholly against said lands and not against any other property or estate of said defendant.'' Nor am I able to see the force of the application made by the majority to the case of *Farmers & Merchants Bank* v. *Layson Lumber Co.,* 87 Ark. 607. The statute under consideration in that case provided that the proceedings should be personal against the owner, but that where the owner was unknown, and it was so stated in the complaint, the proceedings should be *in rem.* The suit under which the sale was made was not a proceeding *in rem,* but was a personal suit against one Eubanks, who was not the owner of the property, and this court decided that the real owner was not bound by the decree. That was not a proceeding *in rem* or in the nature of a proceeding *in rem,* and therefore did not bind any person except the one who was a party to the record. The proceeding involved in the case now before us was one under the statute which declared it to be in the nature of a proceeding *in rem,* and the property itself was bound, irrespective of any mistake as to the name of the supposed owner. The majority disclaim any intention to overrule the case of *Cassady* v. *Norris,* 118 Ark. 449. They undertake to distinguish the two cases, but I am unable to see the force of the distinction.