SECURITY MORTGAGE COMPANY *v.* HARRISON.

Opinion delivered February 27, 1928.

1. MORTGAGES—PURCHASE OF LAND BY SECOND MORTGAGEE.—Where, after mortgaged lands had been sold at tax sale, the second mortgagee purchased them at a foreclosure sale, subject to the first mortgage, and thereafter purchased the lands from the tax purchaser, he gained a title clear of the first mortgage, where, not being in possession of the land, he was under no obligation to pay taxes or redeem from the tax sale.

2. MORTGAGES—DUTY OF SECOND MORTGAGEE TO PAY TAXES.—A second mortgagee in possession, receiving the rents and profits from the mortgaged property, has the duty to pay the taxes and prevent a forfeiture of the land through a tax sale.

Appeal from Sevier Chancery Court; *C. E. Johnson,* Chancellor; affirmed.

*DuLaney & Steel,* for appellant.

*Steel & Edwards,* for appellee.

MEHAFFY, J.   In March, 1919, T. A. Harrison and his wife, Bessie Harrison, being indebted to the Security Mortgage Company, a domestic corporation, in the sum of $1,000, executed and delivered to said Security Mortgage Company a note bearing interest at the rate of 6 per cent. per annum, with coupon notes for interest, and to secure the payment of said notes, T. A. Harrison and Bessie Harrison executed and delivered to the Security Mortgage Company their real estate mortgage upon the south half of the northwest quarter of the northeast quarter of the southwest quarter and the west half of the southeast quarter and the east half of the southwest quarter, in section 35, township 8 south, range 30 west, containing 220 acres.   The said Bessie Harrison, wife of the said T. A. Harrison, joined with her husband, and relinquished dower and homestead. The right of appraisement and redemption was waived.

After the execution of said mortgage, in September, 1919, T. A. Harrison and Bessie Harrison, his wife, executed and delivered to M. A. Janes a warranty deed to the land described in the mortgage, and the said Janes assumed the mortgage debt as a part of the price of said land, and also executed his note for the sum of $550 for the balance of the purchase money, the grantors retaining a vendor's lien for the unpaid purchase price.   The mortgage company brought suit to foreclose its lien, alleging that its mortgage lien was superior and paramount to that of Janes.

Janes and wife, in January, 1921, executed and delivered a mortgage to C. E. Kitchens for $889.35.   The Bank of Lockesburg became owner of the notes, and brought suit and foreclosed the vendor's lien, and a sale was ordered, subject to the lien of the mortgage of the Security Mortgage Company. The bank became the purchaser at the sale. The mortgage company asked that its lien be

declared superior to the other liens mentioned. The Bank of Lockesburg answered, and filed a cross-complaint, alleging that the land was in Road Improvement District No. 2 of Sevier County, and that the benefit assessments were not paid, and the road improvement district brought suit to collect the assessments and a decree was rendered in the Sevier Chancery Court adjudging the .amount of taxes, penalties and costs against the lands above described, and ordering them to be sold in satisfaction thereof. A commissioner was appointed, the lands were sold by said commissioner and purchased by the road improvement district. Thereafter the commissioner executed a deed conveying said lands to said improvement district, and this deed was acknowledged and approved in open court. Thereafter, on the 21st day of April, 1925, the commissioners of said district sold and conveyed the land to the said Bank of Lockesburg. A deed was executed and delivered by the road improvement district to the Bank of Lockesburg. The chancery court rendered a decree to the effect that the Bank of Lockesburg was the owner of the land involved, free and clear of any right, title, claim, interest or equity of the plaintiff; dismissed the plaintiff's complaint for want of equity, and decreed the title to the land to be in the Bank of Lockesburg. The case was tried on an agreed statement of facts.

It is not necessary to copy the agreed statement of facts or to set out the facts in this opinion. The only question involved in the case is whether the bank, by purchasing the land from the road improvement district, acquired a title which was superior to the mortgage of the plaintiff. The bank had foreclosed a lien on the land, procured its sale, and purchased it subject to the mortgage of the Security Mortgage Company. The testimony shows that the bank paid the interest to the mortgage company for September, 1923, and March and September, 1924, and March, 1925. In April, 1925, the road improvement district made a deed to the bank. The bank had purchased under foreclosure sale. Appellant's con-

tention is that, the bank being in possession of the land, and it being its duty to pay the taxes in order to protect its own interest, its purchase from the road improvement district operates as a redemption, and that the lien of appellant is superior to any claim of the bank.

Road Improvement District No. 2 of Sevier County was a road improvement district formed under the general laws, and the taxes became delinquent for the year 1921, a decree was rendered in November, 1922, against the delinquent lands, and a sale was made in December, 1922. On April 5, 1923, the Bank of Lockesburg purchased at foreclosure sale, subject to the plaintiff's mortgage, and on that day a commissioner's deed was executed and delivered to the Bank of Lockesburg to said land. The bank of Lockesburg thereby became the owner of said land on April 5, 1923. The deed from the commissioner to Road Improvement District No. 2 was on December 2, 1924, and in April, 1925, the road improvement district conveyed to the Bank of Lockesburg.

Appellee in its brief states: ''The only question for this court to determine is whether or not the appellee owed any duty to appellant to pay the taxes and special assessments charged against said lands for the year 1921. If it was under obligation to pay the taxes, then its purchase from the road improvement district should be treated as a redemption, but, on the other hand, if it owed no such duty to pay said taxes, its title, so acquired from the improvement district, is superior to the title of appellant.''

At the time the lands became delinquent, in 1921, the appellee was not the owner of the land, but he became the owner on April 5, 1923, after the lands had been sold for the payment of taxes and purchased by the district. If the Bank of Lockesburg had been the owner at the time of the sale to the district, it would have been its duty to pay the taxes, but its interest at that time was the same as a mortgagee. It held a note given for the purchase price of the land, it brought suit and foreclosed

on this note and became the purchaser, but it did not become the purchaser until after the road improvement district had purchased the property, and it was therefore under no obligation to the mortgagee, Security Mortgage Company, to pay the taxes.

This court has recently said:

"The holder of the second mortgage was under no obligation to the holder of the first mortgage to redeem the lands in possession of the mortgagor from their sale for delinquent taxes, notwithstanding the owner was bound to the payment of such taxes by the terms of the first mortgage. The appellant, under its mortgage, could have paid the taxes before the lands were sold as delinquent and charged them against the mortgagor, and it could have redeemed the lands in the manner provided by the act from the tax sale within the time allowed therefor for such sale. Appellant makes no showing of having been prevented from either paying the taxes or redeeming the lands by any conduct of the holder of the second mortgage calculated to lull him into security in the belief that such taxes would be paid or redemption would be made for his benefit." *Security Mortgage Co.* v. *Herron,* 174 Ark. 698, 296 S. W. 363.

At the time the taxes became delinquent and at the time the lands were purchased by the district, the Bank of Lockesburg was not the owner, and therefore under no duty to pay the taxes.

"A bidder to whom property has been struck off at a judicial sale may assign his bid before the deed has been delivered, and the deed will be made directly to the assignee and pass title to him." 24 Cyc. 31; Wiltsie on Mortgage Foreclosure Sales (3 ed. vol. 1, § 678). "In the case of *Wells* v. *Rice,* 34 Ark. 346, the court said that a sale made under a decree of the chancery court is not completed until confirmed by the court, and a deed to the purchaser confers on him no right to the property." *Purcell* v. *Gann,* 113 Ark. 332, 168 S. W. 1102.

Appellant calls attention to the case of *McFaddin* v. *Bell,* 168 Ark. 826, 272 S. W. 62. This case holds that,

when one purchases subject to a mortgage, this amounts to a recognition by the purchaser or second mortgagee that such mortgages as were on record were prior valid liens on the lands, so, when the Bank of Lockesburg purchased the land, it purchased with the knowledge of the existence of the mortgage of appellant; but this does not mean that he owed any duty to the prior mortgagee to either pay the taxes or redeem from tax sales. Appellant argues that, since the Bank of Lockesburg was in possession of the land under its foreclosure of its second lien, receiving all rents and profits of the land, it became and was the duty of the bank to pay the taxes, but we do not find any evidence supporting the position or contention that the bank was in possession, receiving the rents and profits. Of course, where one is in possession, receiving rents and profits from mortgaged property, he has money received from property itself with which to pay the taxes, and it has been held that, under such circumstances, he owes the duty to pay the taxes, but the evidence in this case does not show that the bank was in possession and does not show that it received any rents or profits from the property. *Cotton* v. *White,* 131 Ark. 273, 199 S. W. 116.

It is contended also by the appellant that the letters introduced show that the bank intended to pay the first lien. E. K. Edwards, who is said to have been the attorney for the bank at the time, advised the mortgage company of the time of the sale, and stated that, if the bank became the purchaser at the sale, as it probably would, then the bank would pay the accrued interest on the loan and meet the other payments. This was a recognition of the prior lien of the mortgage company, but, even if competent evidence, it would not bind the bank to pay the taxes or redeem the land from tax sale. This letter was written in 1923, and the taxes became delinquent for the year 1921. Moreover, there is not any testimony that the bank authorized the letter or authorized any statement to be made justifying the conclusion that the bank had made a promise to pay appellant's

debt or to redeem the land from tax sale. Besides, nothing in the letter indicates that the bank intended to pay the taxes or that the mortgage company could construe as a promise to pay the taxes or to redeem from the tax sales.

As said in the case of *Security Mortgage Co.* v. *Herron, supra,* "appellant makes no showing of having been prevented from either paying the taxes or redeeming the lands by any conduct of the holder of the second mortgage calculated to lull him into security in the belief that such taxes would be paid or redemption would be made for his benefit."

The appellant could have paid the taxes, it could have prevented any delinquency, it could have paid the taxes before the lands were sold as delinquent and charged them against the mortgagor, or it could have redeemed the lands in the manner provided by law, but it did not undertake to do either. It suffered the lands to become delinquent, permitted them to be sold, the sale to be confirmed, a deed executed to the road improvement district, and apparently took no steps whatever to protect its interests.

We agree with contention of appellant that, if the bank was bound to pay the taxes to protect the prior mortgagee and permitted the same to forfeit, it would be treated as a redemption. It is also true that, if the proof showed that the bank was in possession, receiving the rents and profits, receiving the money with which to pay the taxes, or if the bank had been the owner when the taxes became delinquent and the land sold, it would have been its duty to pay.

We do not deem it necessary to call attention to other authorities, because we think the rule announced in *Security Mortgage Company* v. *Herron, supra,* is controlling in this case. We find no error in the decree of the chancery court, and it is therefore affirmed.