FIRST NATIONAL BANK *v.* NEW ENGLAND SECURITIES
COMPANY.

Opinion delivered April 23, 1928.

1. TAXATION—LIEN BY PAYMENT OF TAXES.—Where a person pays
   taxes on land at the request of the owner and for his accommoda-
   tion merely, no lien on such land as payment exists as against a
   mortgagee.

2. TAXATION—LIABILITY FOR TAXES OF PERSON IN POSSESSION.—Where
   a purchaser from a mortgagor in possession of land was receiving
   the rents and profits, he was bound to pay the taxes, and could
   not enforce his lien for taxes as against the mortgagee.

Appeal from Clay Chancery Court, Western Dis-
trict; *J. M. Futrell*, Chancellor; reversed in part.

*F. G. Taylor*, for appellant.

*John L. Bledsoe* and *Bowersock, Fizzell & Rhodes*,
for appellee.

MEHAFFY, J.   This action was begun by appellees
on July 28, 1926, in which action they sought to foreclose
a second deed of trust executed to them by the defend-
ant, George W. Transue, upon lands in the Western Dis-
trict of Clay County, Arkansas.   The appellant, First
National Bank, intervened, and was made a party to
the suit in October, 1926.

One of the defendants, S. P. Lindsey, filed answer,
in which he alleged he had bought the lands embraced
in the deed of trust at a trustee's sale in bankruptcy,
and that he was the owner of said land by virtue of a
deed executed to him by the trustee in bankruptcy pro-
ceedings of George W. Transue; that said lands were
sold under said bankruptcy proceedings, and defend-
ant, Lindsey, became the purchaser, and received a deed,
which was exhibited with the answer.

The only question involved in this appeal is whether
or not the lien of appellant for drainage assessments
paid by it is prior and paramount to the lien of appel-
lee's deed of trust.

The deposition of S. P. Lindsey is substantially
as follows: He was the active vice president of the First

National Bank of Corning, Arkansas. Had known George W. Transue about five years. During the years of 1924 and 1925 witness was cashier of said bank, and, as such cashier, and on behalf of said bank, had some business with the defendant, Transue, with reference to the lands described in plaintiff's complaint. He testified that Transue asked them to look after the renting of said land, collecting of rents, pay the taxes, and look after it for him in general. Transue was absent from the lands and out of the county most of the time. Witness looked after the renting of the land, paid the taxes for him, and any work that needed to be looked after on the place, such as repairing the buildings and looking after the cutting of timber, was done by witness. The rents were applied on Transue's account and indebtedness that he owed the bank and to pay interest to the New England Securities Company. There was an agreement that these rents were to be applied on the account and previous debts. This agreement was part of the agreement, made at defendant's request, that the bank should pay what is commonly called the drainage taxes, and all taxes which included the drainage taxes, and what was generally called State and county taxes. The receipts for the drainage taxes for the years 1924 and 1925 are correct, which the bank paid at the request of defendant, and each are made exhibits to deposition, and marked A and B. The bank paid the State and county taxes for the year 1924 in the sum of $21.38, and receipt is attached as exhibit to witness' deposition. The bank has an assignment of the lien of the Western Clay Drainage District. It is a lien made by the drainage board, and signed by D. Hopson, as president, for the drainage taxes for the years 1924 and 1925. The same are correct and are made exhibits D and E to deposition. The amount for each was $215.

Witness purchased the land described in appellee's complaint at a sale by the bankrupt court; received deed, copy of which is marked Exhibit F to deposition. Wit-

ness took charge of said land under his deed January 1, 1926, and executed a mortgage on the rents of said land to Florence Jones, and attached to witness' deposition a copy of the mortgage made to Florence Jones.

Witness has $133.44, 1926 rents, to apply on the chattel crop mortgage, if he is permitted to retain that, as he has not used any of it. It is witness' intention to deduct the amount expended on the buildings on the farm, about $45, and apply the balance on the Florence Jones note. Mrs. Jones lives in Fayetteville, Arkansas. Since prior to April 28, 1926, and up to the present time, witness has been solvent financially. Witness wrote a letter on the 10th of April, 1924, to George Transue, at Hoxie, Arkansas, with reference to paying the general taxes, in which letter he acknowledged having received letter from Transue, and he inclosed three checks, amounting to $21.62, for which he was given credit, and the letter stated that they would be glad to look after his taxes and use what scrip they could on them. But witness did not have the letter. Transue also requested verbally that witness look after the payment of his taxes, as Transue would be gone most of the year, and wanted the bank to look after the farm in general the same as if it was its own. Copies of two letters are attached to the deposition. Witness could not state whether the State and county taxes for the year were paid on April 10, 1925, or at a subsequent date. Defendant gave instructions each year to pay the taxes, and was especially desirous that the ditch taxes be paid each year on account of avoiding a 25 per cent. penalty thereon. The assignment by D. Hopson, president of the Western Clay Drainage District, of a lien of said drainage district in favor of the First National Bank, was delivered to the bank a week or ten days ago.

J. F. Arnold testified, in substance, as follows: He is 52 years old; a resident of Corning, Arkansas; is field-man for the First National Bank of Corning, Arkansas, and was acting as such during the years 1924

and 1925, and looked after the rental and collecting of rents on the land of defendant, George W. Transue. After making first rental contracts there was a tenant quit, and he had to get other men to take his place. On behalf of the bank, witness looked after collecting rents and the payment to the bank by renters, and getting the crops gathered. Defendant asked witness to see that the tenants were getting along properly, and that they turned in their rent to the bank, and to see that Lindsey did not let his taxes go delinquent, as there was a heavy penalty if the taxes were not paid when due, and witness did that, in accordance with his request and that of the bank. Witness does not know what the rents amounted to, as his business was to see that the tenants left it at the bank, and he kept no record of the amount of either year.

Exhibits mentioned by witness were then introduced, and witness continued. Another exhibit is a letter of Lindsey, cashier, to George W. Transue, dated Corning, April 24, 1924, which is substantially as follows:

"Your letter received regarding the Boulton order for clearing, of which Mr. Boulton was not claiming that you gave him an order for the clearing to the amount of $20, which he claims that you had arranged with him to have the clearing done, and you having arranged with us to look after your farm as to renting it as well as all other matters pertaining to the farm, we of course did not want to pay him anything for something that we knew nothing about, nor had hired him to do any clearing. Mr. Smith was telling me that the officers had posted some kind of a notice on the door of the dwelling on the farm that was in reference to some kind of suit as to the sale of your property. Not knowing anything about the nature of the notice, we notified you, so that you could see about the matter in the event that we could not look after it for you."

Another letter from defendant, Transue, was in substance as follows:

"Don't you think you should send Fred Arnold to see Smith, Sprouse and Story and hurry them up on the cotton job? Don't forget to pay John Smith for oats and John Sprouse $15 for the corn. I am afraid my lawyer is assisting S. A. Foster at Walnut Ridge to beat me out of the cow you have a mortgage on. Will you write him and tell him not to sell the cow and calf, as you have a mortgage on her and the calf?"

Another letter, dated November 20, 1925, to the defendant, Transue, was in substance as follows:

"We have your letter of the 18th, stating that we should send Fred to look after Smith and Sprouse in reference to getting out their crops. Wish to advise that Mr. Arnold has been looking after the matter, as you asked us early in the spring to look after your farm as to renting it and such other matters in reference to the welfare of the farm, hence we have been giving it our attention as your agent, collecting the rents and placing such credit on your account—paid your ditch taxes and general taxes for the year 1924—and still carrying the receipts as having been paid for you as your agent, and trust that you can arrange for them the close of the year, as you will have the ditch taxes for 1925 due this coming December, and we will also look after them for you the same as we have other taxes paid on your farm in general. It is slow getting out cotton on account of continued rains, and the tenants advise us that most they have got out they have had to mud-boat it out. I am writing Mr. Forest at Walnut Ridge in reference to the cow. We have rented all of the farm for the coming year to W. M. Smith, as we think we can handle the entire place better than having several parties on it, which has caused more or less contention this year among the tenants."

The record of Western Clay Drainage District, subdivision 5, was introduced, showing the assessment on the lands.

The chancellor entered a decree to the effect that the plaintiffs, New England Securities Company, have a judgment *in rem* against the defendants for the sum of $357, with interest at the rate of 8 per cent. from February 8, 1923, which judgment is secondary only to that of First National Bank in the sum of $21.38, together with the interest at 10 per cent. The intervener, First National Bank, excepted to the finding of the decree of the court, and prayed an appeal to the Supreme Court, which was granted. The appellee has been granted a cross-appeal, and asks a reversal of that part of the decree declaring a lien for taxes of $21.38 prior to its mortgage lien.

The appellant in its intervention states that the defendant, George W. Transue, transferred to it the possession, care and control of the lands described in appellee's deed of trust, and authorized and requested appellees to pay the taxes and drainage assessments upon said lands, and to rent and collect the rents and account to him for same. The bank was therefore in possession of the land, receiving the rents and profits under an agreement with the owner to pay the taxes. It was the owner's duty to pay the taxes. And the bank, being in possession under a contract with the owner, as alleged by it, to pay the taxes and to collect the rents, was bound under the law and its contract with the owner to pay the taxes, and its payment was a payment for the owner.

It is the contention of the appellant that "one who pays the debt of another by request of the other, which debt is a lien on property, real or personal, has a lien on the property for the amount paid."

It is unnecessary to determine here whether, as between the owner of the land and the appellant, it did, under the contract between the parties, have a lien on the property. The controversy here is between the appellant and the mortgagee. The appellant was under no obligation whatever to pay the taxes.

"When taxes are paid on another's land under such circumstances as to give a right of recovery for the taxes paid, as set forth in the preceding section, the person making the payment will have an equitable lien on the premises for the amount so paid, or, according to the doctrine prevailing in some jurisdictions, will be subrogated to the lien of the State or municipality. But no such lien exists where the payment was voluntary, in the legal sense, or was made at the request of the owner and for his mere accommodation. Nor can this lien be made effective against a subsequent purchaser from the real owner, who had no notice of the circumstances under which the taxes were paid." 37 Cyc. 1154.

According to appellant's own statement, the taxes were paid by it at the request of the owner and for his mere accommodation. And therefore no such lien exists. especially as against the mortgagee.

This court said in a recent case: "Where one is in possession, receiving rents and profits from mortgaged property, he has money received from the property itself with which to pay the taxes, and it has been held that, under such circumstances, he owes the duty to pay the taxes." *Security Mortgage Co.* v. *Harrison,* 176 Ark. 423, 3 S. W. (2d.) 59; *Cotton* v. *White,* 131 Ark. 273, 199 S. W. 116.

"It is not disclosed by the record that the claim probated by appellant for taxes was for taxes paid by him during the time he occupied the premises. His occupancy was reimbursement for the payment of the taxes." *Beverly* v. *Nance,* 145 Ark. 589, 224 S. W. 956.

The appellant was not only in possession, receiving the rents and profits, but the proof in this case shows that it actually received as rent for the year 1924 $231.16, and for the year 1925 $199.52, making a total of $430.68, a few cents more than the improvement taxes amounted to. In all these transactions the bank was represented by Mr. S. P. Lindsey, the active vice president of the First National Bank. And he finally became the pur-

chaser of the property. If the taxes were a lien, they were a lien on the land, and appellant's first vice president purchased the land. The appellant, receiving the rents and profits under the contract alleged in this case, was bound to pay the taxes. Instead of doing that, it used the money received for rent to pay a private debt due itself, and then seeks to enforce a lien for the taxes that it paid. As it was in possession of the property, under contract to receive the rents and profits and pay the taxes, it could not use the rents and profits to pay a private debt to itself and then claim a lien on the land as against the mortgagee for the taxes paid.

We do not think the sections of the Digest referred to and discussed have any application.

It follows from what we have said that the case must be affirmed on appeal and reversed on cross-appeal. The case will therefore be affirmed on appeal and reversed and remanded on cross-appeal, with directions to enter a decree making the judgment of the New England Securities Company a lien on the land prior and superior to the lien of the First National Bank.