DEANER v. GWALTNEY.

4-4698

Opinion delivered June 21, 1937.

*Frank C. Douglas,* for appellants.

*Shane & Fendler,* for appellees.

SMITH, J. Giles Thomas was the owner, at the time of his death in 1916, of the northwest quarter of section 15, township 13 north, range 10 east, in Mississippi county. He was survived by his widow and three adult children. In a partition proceeding, the land was divided into three equal parts, but all subject to the dower and homestead rights of the widow, who died in 1928. The west third was assigned to Lucy Deaner, a daughter, now deceased, whose children and surviving heirs brought six separate suits to cancel sales of the land for the nonpayment of drainage taxes. The suits were in the nature of a bill of review, and, also, under the stat-

ute permitting suits to set aside judicial sales within five years from the date thereof.

The land lies within Drainage District No. 9 and in Subdistrict No. 3 of District No. 9, and it appears that neither of the parties to this suit nor their ancestor had ever paid any of the drainage taxes assessed against the land. There had been altogether six sales in one or the other of the drainage districts under decrees foreclosing the lien of the improvement districts for the nonpayment of the assessed benefits. The court held that four of the sales under these decrees were void, but that two were valid. The sales held good were rendered pursuant to decrees in cases Nos. 1198 and 1199, and will be referred to herein by those numbers.

Case 1198 was a suit by Subdistrict No. 3 to enforce payment of the delinquent, 1927, taxes. The suit was begun March 10, 1928, decree was rendered May 26, 1928, and the land was sold to the drainage district by the commissioner named in the decree August 25, 1928. In the complaint, notice of pendency of suit, decree of sale, notice of sale, report and decree of confirmation, the name of the supposed owner was given as "Giles Thomas Estate."

Case 1199 was brought by Drainage District No. 9 on the same date as Case 1198, and the dates of its progress are identical with that case. In case 1199 the name of the supposed owner is given as Giles Thomas, and the sale in that case was to the plaintiff drainage district.

It appears that although these sales were made in 1928 they were not confirmed until February 18, 1935. During this interval repeated efforts were made by the commissioners of the drainage district to induce appellants and other delinquent landowners to redeem their lands. This delay in confirming the report of sale does not affect its validity. The cases remained upon the court docket, and no property owner was misled or prejudiced by this delay. The contrary is true, the delay was a matter of indulgence to the landowners. It is a matter of common knowledge that this was the period of the

depression, when land values had almost disappeared. During this interval negotiations were conducted for refinancing the indebtedness of the drainage districts, which, when finally consummated, excused and remitted the payment of the taxes for the years 1932 and 1933.

After the approval and confirmation of the reports of sales of the land to the drainage districts, appellee, Gwaltney, obtained deeds from the districts on February 11, 1935. The lands had forfeited to the State for the nonpayment of the general taxes and, on February 22, 1935, appellee obtained a redemption deed from the State Land Commissioner.

Numerous attacks are made upon the decrees pursuant to which the lands were sold. One is that the list of lands sold for drainage taxes by the commissioners was not prepared and certified by the chancery clerk to the county clerk in conformity with the provisions of act 445 of the Acts of 1923, p. 395. This act was repealed by act 60 of the Acts of 1929, vol. 1, p. 134. As has been said, the sales were not confirmed until 1935, and the act of 1923 had been repealed by the act of 1929.

It was stipulated that the county court clerk did not attach his warrant to collect taxes to the tax book, which contained the drainage as well as the general taxes, and did not deliver the tax book to the collector by the first Monday in January, and did not keep the list of lands sold posted in his office for one year after the sale. Based upon this stipulation the argument is made that the decrees of foreclosure were unauthorized. If it be conceded—which we do not decide—that the provisions of the statutes imposing these requirements apply to delinquent drainage taxes as well as to delinquent general taxes, it may be said that these omissions were mere errors which, so far as this case is concerned, were cured by act 142 of the Acts of 1935, although that act was repealed by act 264 of the Acts of 1937, inasmuch as this case was pending when the repealing act was passed. *Carle* v. *Gehl,* 193 Ark. 1061, 104 S. W. (2d) 445.

It is insisted that the drainage districts having foreclosed and sold the land for delinquencies prior to 1927

had no right to foreclose for the delinquencies of that or any subsequent year. It will be remembered that these prior foreclosures were declared void, and if there could be no subsequent foreclosure the drainage districts could neither enforce the tax lien nor acquire title to the land. Here the owners refused to redeem from the prior foreclosures and failed also to pay current assessments. Certainly they could not defeat the collection of the taxes due on the land in this manner.

It is conceded that the description of the land in the cases where the sales were upheld is good, but it is argued that the sales were bad because the notice of the pendency of the suits was not dated. The statute does not require that it should be. Both suits were instituted March 10, 1928, and while the notice of the suits is not dated they are otherwise in good form and are signed by the clerk, and the decrees were not rendered until May 26, 1928, during which interval there was ample time to give the notice required by § 3631, Crawford & Moses' Digest, as appears to have been done. This section contains a form for the notice to be given, but does not require that the notice be dated.

Apparently the point chiefly relied upon for the reversal of the decree is the failure of the notice of the suits to correctly allege the ownership of the land. It appears that the other two-thirds of the land were also delinquent, and were advertised in the names of the two sons to whom they had been respectively assigned in the partition proceeding. In the suits against the west third, the land here involved, it was advertised, in one suit, in the name of Giles Thomas, and in the other, the name of the supposed owner was stated to be "Giles Thomas Estate."

The written opinion of the chancellor disposed of this contention properly, and we quote from it as follows:

"Lastly, it is contended that the sales are void because the name of the supposed owner in each of the proceedings is improperly stated. Giles Thomas owned the land at the time of his death in 1916. In one case

he is named as the supposed owner and in the other his estate is named. The decree of partition of his lands in 1922 expressly reserves the right of dower and homestead of his widow. Lizzie Thomas was living at the time the sales were made in 1928. It is not likely that it is contemplated that the officers of the district would be required under this statute to obtain an abstract to these lands before proceeding with a sale. Would the sale have been more effective, or the notice of the pendency of the suit have been more explicit if it had stated that the lands belonged to the heirs of Lucy Deaner? In *Simpson* v. *Reinman*, 146 Ark. 417, 227 S. W. 15, it appeared that the person named as supposed owner did not then nor had he ever owned the land. In the case at bar Giles Thomas was the owner of the land, and under the decree of the chancery court partitioning the land, the heirs received their right to the land subject to the dower and homestead right of Lizzie Thomas. Furthermore, there is no showing that there was any administration of the estate of Giles and until there was such, the land belonged to the estate of Giles and was subject to be sold to pay any indebtedness which he may have owed at the time of his death.

"In one of the proceedings it is described as belonging to the estate of Giles Thomas or Giles Thomas est. I am of opinion that this was sufficient even under the ruling in the Simpson case, to render the description of ownership in the notices valid."

It is argued that the sales were void for the reason that, at the time they were made, the title was in the St. Francis Levee District under a sale to the Levee District made on December 1, 1924, pursuant to a decree foreclosing the lien of the levee district for the nonpayment of the delinquent, 1923, levee taxes, and that appellants acquired this title by their deed from the levee district.

The drainage district and the levee district are separate districts, and have levied taxes based upon different benefits, which each may enforce without reference to the action of the other. *Tallman* v. *Board of Com-*

*missioners Northern Road Imp. Dist. of Arkansas County,* 185 Ark. 851, 49 S. W. (2d) 1039; *Oliver* v. *Gann,* 183 Ark. 959, 39 S. W. (2d) 521. But it is insisted that in view of a previous sale by another improvement district, a subsequent sale would be valid only after compliance with the provisions of § 3646, Crawford & Moses' Digest. But it was held otherwise in the case of *Oliver* v. *Gann, supra.* The second headnote in that case reads as follows: "Drains—Power to Sell Forfeited Land.— It was not necessary to resort to sale under Crawford & Moses' Digest, § 3646, before land was sold to the drainage district in payment of taxes due thereon since the land was necessarily sold subject to the lien of all assessments existing against them at the time of sale."

The deed to appellants from the levee district may be disposed of by saying that in legal effect it is a mere redemption from the sale for the delinquent levee taxes. At the time of that sale, appellants were in possession of the land, deriving the rents and profits therefrom. They were, therefore, under the legal obligation to pay these taxes, and cannot acquire title by a sale for the taxes which they should have paid. *Jacks* v. *Dyer,* 31 Ark. 334; *Cotton* v. *White,* 131 Ark. 273, 199 S. W. 116; *Roberts* v. *Miller,* 173 Ark. 38, 291 S. W. 814; *Security Mortgage Co.* v. *Harrison,* 176 Ark. 423, 3 S. W. (2d) 59; *First Nat. Bank* v. *New England Securities Co.,* 176 Ark. 1181, 6 S. W. (2d) 12; *Sharpp* v. *Stodghill,* 191 Ark. 500, 86 S. W. (2d) 934, 87 S. W. (2d) 577.

It is finally insisted that Fuller Amos, a grandson of Lucy Thomas, who was awarded the west third upon the partition of the land, is even now only twenty-two years old, and that he has, because of his minority at the time of the sale, the right to redeem therefrom. We must look to the statute under which the foreclosure proceedings were had for the answer to this contention, as a minor has no right of redemption except as given by statute. Section 24 of the Drainage Act, (act 279, Acts 1909), pursuant to which this proceeding was had, provides in part as follows: "* * * Any landowner shall have the right to redeem any and all lands sold at such

sale within five years thereafter; which shall run from the date when the lands were offered for sale and not from the date the sale is confirmed.''

This right of redemption was given to all owners and was not limited to minors, nor were minors given any right of redemption peculiar to themselves. Minors and all others had the same period of redemption, which has been changed by later statutes, which we do not review, as none of them are applicable here, inasmuch as the suit in the instant case, whatever its nature and purpose may be, was not filed until August, 1936, and the sales attacked were made in 1928; and it is from this date, and not from the date of confirmation of the sale, from which the time for redemption is computed. Section 1179, Sloan's Improvement Districts in Arkansas, Vol. 2, p. 1028, and cases there cited.

Section 23 of the Drainage District Act, appearing as § 3631, Crawford & Moses' Digest, after providing when the decree of foreclosure may be rendered, contains a ''saving to infants and to insane persons having no guardians or curators, the right they now have by law to appear and except to such proceedings within three years after their disabilities are removed.'' It is obvious that this is not a redemption statute, and the exceptions to the proceedings which the statute gives minors the right to make have been examined and found to be without merit.

Other questions are raised which we think it unnecessary to discuss.

The decree of the court below is correct, and is, therefore, affirmed.