HIRES *v.* DOUGLAS.

4-5516                                    129 S. W. 2d 959

Opinion delivered June 12, 1939.

*Horace Sloan, James G. Coston* and *J. T. Coston,* for appellant.

*Frank C. Douglas,* for appellee.

GRIFFIN SMITH, C. J. The question for determination is whether the chancellor erred in refusing appel-

lants' pleas to set aside foreclosure sales and confirmation orders affecting their lands in Blytheville Road Improvement District No. 5, and in Blytheville Road Maintenance District No. 5.

Suits were filed October 26, 1934, with decrees November 28 of the same year. It was alleged that taxes for 1932 had not been paid. Of the lands involved, 230 acres were owned by Edith Hale Howton, and 240 acres were owned by Orlena Hires. There was testimony that the Hires property was worth $25,000, and that the Howton holdings, if the lands had been cleared, would have been worth $75 an acre.

As to lands in the road improvement district, total taxes were $40.58. The decree recited that the sale be had for the taxes, statutory penalty of 25 per cent., and cost, and that if such sums be not paid on or before September 1, 1935, the sale be consummated. The commissioner (January 21, 1936) gave notices of sales, showing the delinquent taxes charged against each tract. The notices contained this statement: "In addition to the amount of tax or installment of benefits charged on the respective tracts, there was also adjudged against the several tracts a penalty of 25 per cent., attorney's fee of 10 per cent., and all costs."

The commissioner's reports show sales to Frank C. Douglas February 17, 1936. The first four tracts aggregating 155 acres under four descriptions were (according to the commissioner's report) sold for $16.05. The next two tracts, embracing 80 acres under two separate descriptions, were sold for $11.52, as were two other tracts of forty acres each; and 200 acres assessed as five separate forties were sold for $31.73, or a total of $70.80 for the twelve tracts.

Foreclosure suits in the road maintenance district show that notice of sale was identical with that of the road improvement district except as to the amount of taxes ($118.79), etc. The first four tracts were sold for $37.79, the next two for $27.82, two others for $27.82, and the next four for $82.95, a total of $176.38. The report was approved by the court February 24, 1936.

Numerous grounds of avoidance of the consequences of sale and confirmation are urged, only two of which will be discussed in this opinion. Either, we think, was sufficient to avoid the sales.

*First.* Although the several tracts were ordered sold separately for the taxes, penalty, and cost assessed and decreed against them, the commissioner's report shows sale *in solido,* and this the law does not permit.

Act 338 of 1915 authorizes assessments against "particular tracts of land, showing benefits per acre or assessed benefits per tract."

In *Montgomery, et al., v. Birge,* 31 Ark. 491, Chief Justice English, speaking for the court, said: "It is sufficient to say of the tax deed relied upon by appellants that it is void on its face. It recites the sale of all the lands, a number of tracts in different sections, amounting to 960 acres, *en masse,* for the sum of $56.06, the gross amount of taxes, penalties, and costs charged upon the whole of them."

It was said in *Cocks v. Simmons,* 55 Ark. 104, 17 S. W. 594, 29 Am. St. Rep. 28, as shown by the state report headnote, that "A tax deed which recites the sale, in a body and for a gross sum, of several sections of land severally assessed, is void."

A headnote in *Salinger v. Gunn,* 61 Ark. 414, 33 S. W. 959, is: "A [tax] sale in a body, and for a gross sum, of several lots of land separately assessed, is void."

Chief Justice Hill, in *LaCotts v. Quertermous,* 83 Ark. 174, 103 S. W. 182, said: "Appellees also insist that their tax title is good; but it is void on its face. It is shown that lots 1 and 2, block 21, in the town of Goldman, were sold as one tract for the sum of $8.92½ cents. Such tax sales are void."

In *Lawrence v. Zimpleman,* 37 Ark. 643, at page 646 it was said: "Moreover, it appears from the recitals of the tax deed that two tracts of land were sold together, for the tax due on the whole. Such a deed casts no cloud upon the owner's title."

Referring to some of the older cases which held a tax deed void if it showed upon its face that lands severally

assessed had been sold *en masse,* this court said in *Cairo & Fulton Railroad Company* v. *Parks,* 32 Ark. 131, at page 143: "Without reference to the particular state of case under which these decisions were made, it will be seen that in none of them have they given to the recitals in the deed a conclusive effect as evidence; but have held the deed only *prima facie* evidence of the truth of the recitals, and if there is wanting the necessary recitals to show *prima facie,* a compliance with the requirements of the statute in order to give power to sell, or which are in other respects essential to protect the rights of the taxpayer, the sale is held to be illegal, and no title passes to the purchaser under such sale."

While it is possible the commissioner, in the case at bar, grouped several tracts in his report and showed *in solidum* the amounts realized from the sales when the fact may have been that each tract was sold separately for the amount of the taxes, penalty and cost extended against it; yet, the only record before us is the commissioner's report, showing affirmatively the sales were not made in the manner directed by the decree, and as the law requires. Therefore we must hold, in consonance with former decisions, that the deeds executed by the commissioner (which do not appear in the record) are void.

*Second.* Neither the decrees of foreclosure nor the notices provided for payment of interest. Pertinent parts of § 25 of Act No. 338 of 1915 are printed in the margin.[1]

It will be observed that the court is *required* to render judgment for ". . . the amount of such taxes and

---

[1] If the assessment [of] the district as certified to by the clerk of the county court to the collector shall not be paid by the time fixed by law for the payment of county taxes, a penalty of 25 per cent. shall attach for such delinquency and the board of commissioners shall institute proceedings in the chancery court for said county to enforce the collection of said delinquency, and said court shall give judgment against said lands and the real property for the amount of such taxes and said penalty of 25. per cent. and the interest on the same for the expiration of the time for the payment of same to the collector at the rate of six per centum and for all cost of said proceedings. Such judgment shall provide for the sale of said delinquent lands for cash by a commissioner of the court after advertisement, as hereinafter set forth.

said penalty of 25 per cent. and the interest on the same . . . at the rate of six per cent. per annum, and for all cost of said proceedings.''

It is urged in condonation of the omission that appellants, who would benefit through failure to include interest, are in no position to complain. But the law did not, in declaring the policy in question, contemplate equities of former owners whose rights had been forfeited. Its purpose was to include, in a single suit, all items properly chargeable against the delinquent lands.

Not only does § 25 require that interest be included in the decree, but the form of notice supplied conveys information that the lands will be sold ''. . . for the purpose of collecting said taxes, *together with all of the interest,*[2] penalties and costs allowed by law.''

In discussing a transaction somewhat similar to that presented in the instant case, the Supreme Court of Minnesota, in *Security Trust Company* v. *Hyderstaedt,*[3] said: ''We think [that the provisions to which attention has been called] show beyond any question that the treasurer had no authority to sell to an individual for any amount less than the total due on the day of the sale, which is the judgment, interest and cost; and, if this total amount is not bid, then his duty is to strike the property off as sold to the city. His authority to sell is statutory and limited. . . . The treasurer was vested with power to sell in the way and for the amount so plainly prescribed in the statute. He could not assume the exercise of a power which was not conferred upon him, and sell for less than the amount due. . . . Sale was made, and the certificates issued to the purchaser showed upon their face that the latter as well as the treasurer had disregarded the statutory provisions. A purchaser under such circumstances could acquire no right or interest as against the owner of the property, for he was bound to know and observe the requirements of the law. The certificates were nullities, and constitute no defense in an action to determine an adverse claim.''

---

[2] Italics supplied.

[3] 64 Minn. 409, 67 N. W. 219.

564

By § 27 of Act 338 it is provided that "In any case where the property is offered for sale by the commissioner, . . . and the sum of the taxes, together with interest, cost and penalty, is not bid for the same, the commissioner shall bid the same off in the name of the road improvement district, bidding therefor the whole amount due, as aforesaid, and shall execute his deed therefor."

The chancery court had no power to order a sale of the property for less than the statutory obligations, and such obligations included interest. Nor could the commissioner sell for an amount less than the taxes, penalty, interest and cost.

Appellee was charged with notice that his bid must include all of the items provided by law, and he could not purchase without paying the statutory interest requirement.

The decrees are reversed, with directions to avoid appellee's deeds to the lands in question, it being made mandatory upon appellants to pay the tenders.