LONDON *v.* MONTGOMERY.

4-8105                                               201 S. W. 2d 760

Opinion delivered April 7, 1947.

Rehearing denied May 26, 1947.

*Virgil R. Moncrief* and *John W. Moncrief,* for appellant.

*W. A. Leach,* for appellee.

GRIFFIN SMITH, Chief Justice. The action was begun in Circuit Court as a suit in ejectment, with the plaintiffs alleging that they were entitled to possession of forty-six and two-thirds feet "off of the south side of Lots Seven and Eight in Block Thirty-six in Flood's Addition to the City of Stuttgart." The action was transferred to Chancery.

The lots forfeited for 1930 taxes and were duly certified to the State. In 1936 the State's title was confirmed under Act 119 of 1935, and in September, 1942, the Land

Commissioner conveyed to appellees. Appellants contend (a) that the original sale and subsequent confirmation were void; (b) there was an illegal assessment of road taxes for 1930 and there were other void assessments, with confusion as to valuation; (c) a recital in the decree shows that certain redemptions had been effectuated, and the decree does not point with certainty to the property so redeemed; and (d) appellees' acts in collecting rents amounted to a redemption.

It is conceded by appellants that the lots are 50 x 140 feet, and if considered as a unit they occupy an area 100 x 140 feet. The description in all of the proceedings prior to the decree was "Forty-six and two-thirds feet S. Side L. 7-8," etc. Insistence is that "side" must be construed to mean *half*. There is this contention:

"Exclusive of ten feet for alley right of way on the north end and twenty-five feet for street right of way on the south end, each of these lots is 140 feet in length; and exclusive of thirty feet for street right-of-way on the east side, each of these lots is fifty feet wide. The south end of the two lots (combined as a body) has 70 x 100 feet, exclusive of public right-of-way. Therefore, forty-six and two-thirds feet could not be a description of the entire south 'end' or south 'side,' and this necessarily results in having a smaller or lesser body to be taken somewhere out of a larger body."

We think the references to streets and alleys is more confusing than revealing. A drawing will show that if forty-six and two-thirds feet should be taken from the south end, the amount remaining in the south half of each lot would be twenty-three and a third feet. This would leave two lots of the same size north of the severed area, and it seems that the purpose was to divide the lots north and south so that each would have equal areas. The question is, Does south side mean south half, or should it be construed with such meticulous exactness that an ordinary person would be uncertain in respect of the intent?

While as a general proposition the word "side" has reference to the longer dimension of a rectangle, we think

the Chancellor was justified in taking a practical view of the obvious and holding that the result intended would direct a purchaser to either the southwest corner of Lot Seven, or the southeast corner of Lot Eight. From these points the measurement would be north 46 2/3 feet; or, if the words "south side" alone be considered, then 46 2/3 feet would extend entirely across, otherwise the two lots would not be reached, for the description clearly covers "L. 7-8."

Records of the Quorum Court show that for 1930 a tax of three mills was levied "for district road purposes." Appellant's contention is that because the Constitution only authorizes a three-mill "county road tax" there was failure to make a valid levy, hence inclusion of ninety cents in the amount for which the property sold will avoid the sale. In *Berry* v. *Davidson,* 199 Ark. 276, 133 S. W. 2d 442, Mr. Justice BAKER said that where taxes have been levied against land, "however defectively that may have been done," the power to sell for non-payment exists, and confirmation under Act 119 of 1935 cures all defects. To the same effect is *Faulkner* v. *Binns, Trustee,* 202 Ark. 457, 151 S. W. 2d 101.

Contending that there is no power to levy a *district* road tax, appellants say: "Road districts are created in various ways and with various and different functions and with officers or overseers having different powers —some, we believe, being created by local acts prior to the anti-local amendment."

Assuming there could have been locally created districts, there is no suggestion that such was true: nothing more than a possibility. Again, the result represents merely an irregularity. Undoubtedly the tax was for county road purposes, and this being true, there was no illegal exaction.

Taxes were extended pursuant to Act 172 of 1929 as follows: "Value of lot, 300; value of improvements, 200; total value, 300." Because 300 and 200 do not make 300, it is insisted the assessment is void on its face; and for want of a decimal point appellants do not know whether the figures represent dollars, cents, or mills.

*Schultz* v. *Carroll,* 157 Ark. 208, 248 S. W. 261; *Carter* v. *Wesson,* 189 Ark. 942, 75 S. W. 2d 819; and *Mixon* v. *Bell,* 190 Ark. 903, 82 S. W. 2d 33, are cited. The Schultz-Carroll case involves the levy of school taxes. After listing District No. 103, the extension was, "Amount tax voted, 7; for what purpose, 5 gen. 2 bldg." Mr. Justice HUMPHREYS, in writing the Court's opinion, said that these figures, standing alone, were meaningless. In a dissenting opinion Chief Justice McCULLOCH said: "The Constitution authorizes the school tax in mills, and we should indulge the presumption that the figure in the record was intended to refer to the amount of tax thus authorized. It could not have had reference to dollars or cents, therefore it must have meant mills. The omission was a mere clerical error."

In the Wesson case the sale was for $7.32 "more than the entire quarter should have sold for."

The Bell case involved failure to make extensions; but, instead, blank lines were left.

While we think the dissenting opinion by Judge McCULLOCH announced a better rule than the majority holding, there is a distinction between the Schultz-Carroll decision and facts in the case at bar. It is so highly improbable that a lot would be assessed at $3 and improvements at $2, with an extension of $3 to cover the two, that judicial construction in favor of the objecting party should not be invoked. Applying common experience to the transaction, we know that dollars were meant; and failure to utilize a decimal point was nothing more than an irregularity. See *Sawyer* v. *Wilson,* 81 Ark. 319, 99 S. W. 389; *Beasley* v. *Bratcher,* 114 Ark. 512, 170 S. W. 249; *Evans* v. *Dumas Stores, Inc.,* 192 Ark. 571, 93 S. W. 2d 307.

The decree recites that some of the tracts covered by the confirmation had been donated, sold, or redeemed, and "It is adjudged that none of the findings or judgments herein shall be adverse to such donee, purchasers, or persons redeeming, but that on the contrary same shall inure to the benefit of said persons, their heirs or assigns."

We think appellees correctly state the case when they say that had appellants redeemed, ''such redemption could have been interposed as a defense to this proceeding, and the fact that no such plea was interposed is conclusive that there had been no redemption.''

The record shows that the Quorum Court had before it a certificate from the County Board of Education designating the millage voted. For District No. 22 (Stuttgart) the amount was written ''18.'' It is argued that this is indefinite. We do not think the taxpayer was in any respect deceived; nor was there an overcharge. Clearly the figures did not refer to eighteen dollars, or eighteen cents.

In their insistence that the valuation of ''300 for the lot and 200 for improvements'' shows error on the face of the assessment, appellant says that the total valuation was $500 if failure to use dollar marks did not render the entry vague; hence when the total rate of 42.4 mills is multiplied by $300 the tax is $12.72. If extended on $500 the item would be $21.20; therefore the sale was for *less* than the correct sum by $8.48. They seek to invoke the rule adopted in *Hires* v. *Douglas*, 198 Ark. 559, 129 S. W. 2d 959. It was there held that sale of land in an improvement district by a commissioner on order of the Chancery Court where the record affirmatively showed that interest was not included ''. . . has the effect of avoiding such sale,'' the Court being without jurisdiction to act where the foreclosure was on part of the obligation only.

The writer of this opinion wrote the opinion in *Hires* v. *Douglas*. We think that part of the decision holding that the Court was without power to order a sale for less than the total obligation, including interest, was wrong. It was error not to require all of the debt elements to be adjudicated, but this did not deprive the Court of jurisdiction as to the foreclosure. The first ground for reversal—that the Commissioner's report showed sale of several tracts *in solido*—was substantial, and the decision should have rested on that point. That was a judicial sale, while in the instant case a tax forfeiture

440

is involved. Different rules are applicable, but it is not improper to say here that the jurisdictional holding in *Hires* v. *Douglas* is overruled.

Facts incident to appellees' conduct in collecting rents (upon which appellants predicate their contention that redemption was effectuated) were presented by *ex parte* affidavits and filed directly with the Clerk of this Court, and cannot be considered. But even if such supplemental record were allowed, appellants would be met with the showing that time for redemption had expired.

Affirmed.