PINKERT *v.* LAMB.

4-8901                                                 224 S. W. 2d 15

Opinion delivered October 17, 1949.

---

*William J. Kirby* and *U. A. Gentry,* for appellant.

*J. H. Carmichael, Jr., J. H. Carmichael, Sr.,* and *Tilghman E. Dixon,* for appellee.

MINOR W. MILLWEE, Justice. This cause was begun by appellant, Ed Pinkert, as an action in ejectment in Pulaski Circuit Court to establish title and right to possession to the west ½ of lots 1 to 6, inclusive, block 8, Adams Addition to the City of Little Rock. Appellant claimed title through mesne conveyances from Sewer Improvement District No. 94 of Little Rock which purchased the lots at the commissioner's sale pursuant to a decree of the Pulaski Chancery Court rendered November 23, 1937, condemning said property to be sold for delinquent assessments.

Although the complaint alleges that appellee, John Lamb, was in possession of the lots as tenant of James H. Stith, it was stipulated that appellee, Ella Stith, widow of James H. Stith, was the record title owner prior to sale of the lots to the improvement district and held possession through the tenant, Lamb. In their answer appellees attacked the foreclosure decree and sale of the property thereunder as being void for various reasons, and charged that the decree, the deed from the commissioner thereunder and the deed to appellant constituted a cloud upon appellees' title and should be canceled.

The cause was transferred to the chancery court where trial resulted in a decree finding all the issues in favor of appellees; finding that the sale of the property under the 1937 foreclosure decree was void and that the deeds executed pursuant thereto, including the deed to appellant, should be cancelled and that title to the property should be quieted and confirmed in appellee, Ella Stith. This appeal follows.

The property in controversy is situated in Sewer Improvement District No. 94. In 1927, the district filed suit in chancery court to foreclose its lien for delinquent assessments, but the record does not reflect that the lots here involved were included in the original proceeding.

There was evidence of personal service on James H. Stith in 1931, but any delinquencies against the lots in controversy prior to 1931 were presumably paid and the lands redeemed. Later the pleadings were amended to foreclose for delinquencies for subsequent years and the decree of November 23, 1937, was entered condemning the lands herein to be sold for the delinquent assessment for the year 1934. Pursuant to the 1937 decree the lots were sold to the district on March 16, 1938, and the sale confirmed April 12, 1938.

On August 20, 1943, the chancery court, on petition of a receiver of the district, authorized the latter to sell to James Newsome 340 certificates of purchase at $5.50 each, which included the certificate of purchase covering the lots herein. Thereafter Newsome assigned the certificates of purchase to Jack Barry who in turn assigned the certificates to W. I. Stout, Trustee. After expiration of the time for redemption the commissioner of the court, upon the petition of W. I. Stout, Trustee, and order of the court pursuant thereto, executed and delivered to W. I. Stout, Trustee, a deed to the property on October 12, 1943, and same was approved by the court on the same date. Prior to execution of this deed Mary Kimbrough filed an intervention for herself and others similarly situated, attacking the sales of the certificates of purchase and asking that same be canceled and that all owners be permitted to redeem from the commissioner's sale. A consent decree was rendered on September 30, 1943, as a result of this intervention which gave owners of the delinquent lands involved 120 days to redeem from the sale by payment of all delinquencies. The decree further provided that the title to all property not redeemed within the 120 day period should vest unconditionally in the said W. I. Stout, Trustee. The lots here involved not having been redeemed, W. I. Stout and wife conveyed the property by quit claim deed to appellant for a valuable consideration May 26, 1944.

It was further stipulated that benefit assessments were made and taxes levied against the west half of lots 1 to 6, inclusive, block 8, Adams Addition to the City of

Little Rock, as a single tract rather than against each separate lot or parcel, and that same was sold by the commissioner under the 1937 decree under the same description and as a single tract.

This is a collateral attack by appellees on the 1937 foreclosure decree and sale made pursuant thereto, and the burden was on them to prove such defects therein as would render the sale and decree void. Since the trial court found in appellees' favor as to all issues, we proceed to a consideration of the alleged defects upon which appellees rely to sustain the decree.

I. *Collusion and Inadequacy of Consideration in Sale of Certificates of Purchase.* The case of Schuman v. Cherry, ante, p. 342, 220 S. W. 2d 817, involved the validity of the proceedings now under attack. The appellees there, as here, relied upon the cases of Eddy v. Schuman, 206 Ark. 849, 177 S. W. 2d 918, and Schuman v. Eddy, 207 Ark. 925, 184 S. W. 2d 57 to sustain their charge of inadequacy of consideration and collusion in sale of the certificates of purchase. These cases involved a class suit brought by a property owner in an improvement district for protection of the interests of the landowners and the district. In Schuman v. Cherry, supra, we said: ''In the present suit, the district and the commissioners are not parties; so the Schuman-Eddy cases are not in point. Appellees' purpose is not to protect the rights of the district and property holders, but to obtain a title for the appellees. Again—for the sake of argument and without deciding the question—if we concede that the sale of the certificates to Newsome should be set aside, still that holding would return the certificates to the district and would not benefit the appellees, because—as heretofore stated—they had only five years from the foreclosure sale in which to redeem. See *Hopkins* v. *Fields*, 202 Ark. 890, 154 S. W. 2d 22. The time for redemption has long since expired, so appellees are not benefited, whether the title to the three lots be in the appellant or in the district.''

While appellees alleged in their answer that there was collusion on the part of the commissioners and the

purchaser in the sale of the certificates of purchase, they introduced no evidence to sustain this allegation. We are asked to overrule *Schuman* v. *Cherry, supra,* but we decline to do so. What we said in that case applies here, and the sale of the certificates of purchase, though invalid, would not affect the jurisdiction of the court to render the decree and would not render the sale of the property made thereunder void on collateral attack.

II. *Insufficient Description.* The property involved was assessed and sold as ''West ½ of Lots 1-6, incl., Block 8, Adams Addition to the City of Little Rock.'' It is insisted that this is an invalid and indefinite description which renders the sale void. Appellees cite a number of cases, but none of them involve a description similar to the one here employed. It cannot reasonably be contended that superior or technical knowledge would be required to locate the west half of named lots in a given block in a platted addition such as is involved here. We hold the description valid and sufficient.

III. *Property Not Assessed Nor Sold According to Law, and Sold En Masse for Only Part of Indebtedness.* Appellees say that a sale of property *en masse* is void even when the property is assessed *en masse* as a single tract. It is also insisted that it is mandatory under our statutes that each parcel of land be assessed separately. The case of *Board of Commissioners, Paving Improvement District No. 13* v. *Freeman,* 201 Ark. 1061, 148 S. W. 2d 1076, involved a foreclosure for delinquent assessments in a municipal improvement district where the assessment was against lots 2, 3, 6 and north half of lot 7 in a given block. In construing the statute now appearing as Ark. Stats. (1947), § 20-404, which prescribes the method of making assessments, the court said: ''We think a fair construction of the act is that where one person owns several lots, blocks or parcels of land in an improvement district the benefits to them may be assessed together. It certainly was not the intention of the Legislature where a person owned a large number of lots in an improvement district that benefits to each of his lots, blocks or parcels of land, in order to be valid, must be assessed

to each lot, block or parcel of land owned by him. This construction would certainly entail a lot of unnecessary labor on the part of the assessors where one assessment would answer the purpose. A majority of this court in construing a statute similar to this relating to drainage districts, in the case of *Curtsinger* v. *Burkeen,* 126 Ark. 94, 189 S. W. 673, ruled that an assessment of benefits *en masse* was not void.''

In *Hires* v. *Douglas,* 198 Ark. 559, 129 S. W. 2d 959, relied on by appellees, the sale was for a gross sum of several lots separately assessed which was held to be void. Here the property was assessed as a single tract and the foreclosure and sale were *in solido* and were not thereby rendered invalid.

Appellees also urge that the property sold at the foreclosure sale for only the delinquent tax and penalty, without interest and costs, which amounted to a fatal defect. It is true that *Hires* v. *Douglas, supra,* formerly was authority for appellees' contention that the lands must be sold for the taxes, interest, penalty and costs, and that if all of these elements are not included in the sale, it is void. However, that case was overruled on this point in the recent case of *London* v. *Montgomery,* 211 Ark. 434, 201 S. W. 2d 760, where, in reference to the Hires case, we said: ''We think that part of the decision holding that the Court was without power to order a sale for less than the total obligation, including interest, was wrong. It was error not to require all of the debt elements to be adjudicated, but this did not deprive the Court of jurisdiction as to the foreclosure.''

IV. *Appointment of Receiver Void and Title to Property Could Not Be Transferred by Assignment of Certificates of Purchase.* The record discloses that after sale of the lots to the district, the court appointed a receiver to take charge of the properties and collect the rents. Subsequently the court authorized the sale and assignment of the certificates to Newsome. Appellees contend that the appointment of a receiver and assignment of certificates were unauthorized and void. We held against this contention in *Schuman* v. *Cherry, supra,*

and there said: "Appellants gain nothing by their present contention, because the title to the lots would be in the district even if we should ignore the receivership, the sale of the certificates and the deed to Stout; and with the title in the district, appellants could not now redeem. . . ."

Appellees here are in the same position as the appellees in that case and an irregularity in the appointment of the receiver and transfer of the certificates of purchase would not void the foreclosure sale of the property on collateral attack in a suit in which the commissioners of the district are not parties.

V. *The Warning Order or Notice of Pendency of Suit Listed the Names of the Supposed Owners as James H. Smith and Wife, Ella, Instead of James H. Stith and Wife, Ella.* Act 207 of 1937[1] prescribed the type and manner of service when the foreclosure decree was rendered November 23, 1937. This act provides for service on all delinquent defendants by publication of a warning order or notice of the pendency of suit weekly for four weeks. Section 2 of the Act (Ark. Stats. 1947, § 20-441) provides: "On receipt of such delinquent list the board of commissioners shall enforce the collection of such past due assessments by proceedings in the Chancery Court of the County in which said improvement district is situated; and said court shall give judgment against said lands, lots, blocks, or parcels of land, railroad tracks and right-of-way, for the amount of such taxes or assessments, together with the penalty and interest on same, attorneys fees and costs of the proceedings. Such judgment shall provide for the sale of said delinquent lands for cash by a commissioner of the court, after advertisement hereinafter set out. Said proceedings and judgment shall be in the nature of proceedings *in rem,* and it shall be immaterial that the ownership of the said lands, lots, blocks, or parcels of land, railroad tracks and right-of-way be incorrectly alleged in said proceedings, and such judgment shall be enforced wholly against such property,

---

[1] This Act was amended by Act 130 of 1939 and Act 195 of 1949, which are inapplicable here.

and not against any other property or estate of said defendant. In listing said lots, blocks, or parcels of land, railroad tracks and right-of-way, the property may be shown as a single improvement; that is, if a building occupies more than one lot or tract of land, the property may be listed together on one line."

Section 3 of the Act provides for publication of the notice, prescribes the form to be used and then provides: "Then shall follow a list of supposed owners, with a description of each separate property that is delinquent, and amount due thereon respectively as aforesaid."

The proof of publication of the notice or warning order lists the west half of lots 1, 2, 3, 4, 5 and 6 of block 8, Adams Addition in the name of James H. *Smith* and wife, Ella, as owners instead of James H. Stith and wife, Ella. Appellees contend this notice was void as being in violation of the due process clauses of the Constitution of the United States.

Act 207, *supra,* and other acts with similar or identical provisions as to service have been before us in numerous cases. The case of *Ballard* v. *Hunter,* 74 Ark. 174, 85 S. W. 252, involved the validity of service against a nonresident owner of lands in a levee district who was not named as a party defendant. In construing an act with identical provisions insofar as service on nonresidents is concerned, Justice BATTLE, speaking for the court, said: "The fact that the lands in controversy were the property of Mrs. Josephine Ballard, and that she was not made a party defendant to the suit instituted to enforce the collection of the taxes thereon, does not affect the decree therein and the sale thereunder. The act provides that such suit and decree shall be in the nature of proceedings *in rem,* and that 'it shall be immaterial that the ownership of the lands may be incorrectly alleged in said proceedings.' Acts of 1895, p. 89." On appeal the U. S. Supreme Court, in *Ballard* v. *Hunter,* 204 U. S. 241, 27 S. Ct. 261, 51 L. Ed. 461, affirmed and said: "The complaint showed that Ballard was the owner of the lands and that he was a nonresident of the county. It was said, however, that Josephine Ballard was not made

a defendant in the suit, though the records of the county showed that she was an owner thereof. But the statute provided against such an omission. It provided that the proceedings and judgment should be in the nature of proceedings *in rem,* and that it should be immaterial that the ownership of the lands might be incorrectly alleged in the proceedings. We see no want of due process in that requirement, or what was done under it. It is manifest that any criticism of either is answered by the cases we have cited. The proceedings were appropriate to the nature of the case.''

It is the rule generally that the states have more control over the form of service upon their residents than upon nonresidents. 12 Am. Jur., Constitutional Law, § 595. One of the grounds of invalidity urged against a special act creating a road improvement district in *Vietz* v. *Road Imp. Dist.,* 139 Ark. 567, 214 S. W. 50, was that it authorized the commissioners to advertise and sell delinquent lands without bringing a proceeding against the owner, but by description of the land only. In disposing of this contention the court said: ''The fourth ground of attack seems to be that the Legislature has no authority to authorize a foreclosure of a tax lien by proceedings *in rem,* or by proceedings in the nature of proceedings *in rem,* but we have upheld such authority in cases dealing with a similar provision in other special statutes creating improvement districts, as well as general statutes authorizing organization of improvement districts in municipalities. *McCarter* v. *Neil,* 50 Ark. 188, 6 S. W. 731; *Greenstreet* v. *Thornton,* 60 Ark. 369, 30 S. W. 347, 27 L. R. A. 735; *Ballard* v. *Hunter,* 74 Ark. 174, 85 S. W. 252.''

The holding in the Vietz case, *supra,* was reaffirmed in the recent case of *Wood* v. *Gordon,* 207 Ark. 932, 183 S. W. 2d 517. That case involved the validity of Ark. Stats. (1947), § 21-546, which provides the same method of procedure and service in drainage districts as is prescribed for municipal improvement districts in Act 207, *supra.* The court in that case rejected the resident appellant's contention that the method of service by pub-

lication was unconstitutional and cited numerous cases to support its holding.

The case of *Simpson* v. *Reinman*, 146 Ark. 417, 227 S. W. 15, lends support to appellees' contention as to validity of the publication notice under attack. That case has been distinguished on the facts in later cases which have upheld the validity of notice by publication under identical statutes. See, *Security Mtg. Co.* v. *Herron*, 174 Ark. 698, 296 S. W. 363; *Deaner* v. *Gwaltney*, 194 Ark. 332, 108 S. W. 2d 600. In *Taylor* v. *Heinemann*, 199 Ark. 1101, 137 S. W. 2d 742, the court had under consideration the same provision as to service in a levee district statute and said: "This statute is in all essential respects identical with the statute construed in *Simpson* v. *Reinman, supra.* That case was decided by a divided court, and without expressing any opinion as to the correctness of the reasoning of the majority, we decline to overrule it. However, we decline to extend the holding there announced, which we feel we would be compelled to do, in order to affirm the decree here in question. The facts in that case were that one Adams was listed as the 'supposed owner' of the tract of land there delinquent for road improvement assessments. As to him the opinion recites: 'It is not shown that he ever had any title to the property or that he was in possession of it, or made any claim thereto at the time the foreclosure proceedings were had.' . . . In the opinion on rehearing in *Simpson* v. *Reinman, supra,* the late Judge HART, said: 'As we have already seen, while the statute requires them to designate the supposed owners, it relieves them of the consequences of mistakes on their part by providing that a mistake in the allegations of ownership of the land shall not be material. In other words, it does away with the rule that giving of the name of the owner incorrectly invalidates the sale; but the Legislature did not intend to bind the owner where the commissioners named a person as the "supposed owner" who they knew had no interest whatever in the land, or when they acted with gross carelessness in the matter.' "

In the case at bar there is nothing in the record to indicate that there were such persons as James H. Smith and wife, Ella, or that the inclusion of their names was anything more than a typographical mistake of one letter in incorrectly stating the name of Stith. Nor can we say that the commissioners acted with gross carelessness in the matter. To so hold would extend the doctrine of *Simpson v. Reinman* to the point of rendering the statute absolutely meaningless insofar as a mere incorrect statement of the supposed owners' name is concerned. We conclude that the holding in that case is not controlling here and that there was a substantial compliance with the statute relating to publication of the notice which was valid and binding on appellees.

VI. *Appellant Barred by the Seven Year Statute of Limitations.* Appellees have been in possession of the lands in controversy since the 1938 foreclosure sale and interposed the plea of the seven year statute of limitations (Ark. Stats. 1947, § 37-101) as a bar to appellant's cause of action. The sale to the improvement district was on March 16, 1938, and was confirmed on April 12, 1938, and this action was begun on April 12, 1945. Appellees say the statute begins to run from the date of sale while Ark. Stats. (1947), § 20-1143, upon which they rely, provides that the tax purchaser shall have the right to possession upon confirmation of the sale. Appellant insists that mere possession of the original owner after a judicial sale would not become adverse to the purchaser until expiration of the period of redemption. It is unnecessary to determine which, if either, contention is correct in this case in view of a provision of Act 82 of 1945 which now appears as the last proviso in § 37-101, *supra,* and reads: "Provided, however, that this section shall not apply to lands which have been sold to any improvement district of any kind or character for taxes due such districts." The 1945 act became effective February 21, 1945. If it be conceded that the statute of limitations started running April 12, 1938, when the sale was confirmed, the statute was repealed as to an action to recover lands sold to an improvement district prior to the running of the seven year statutory period.

In *Paragould* v. *Lawson,* 88 Ark. 478, 115 S. W. 379, property owners contended that the City of Paragould had lost its rights by adverse possession under a dedication of certain streets to the city. Before expiration of the statute bar the Legislature enacted Ark. Stats. (1947), § 19-2305, which had the effect of denying the defense of adverse possession to the property owners. The court said: "Even if adverse possession began before the passage of the statute referred to above exempting cities of the second class from the operation of the statute of limitation on this subject, the possession had not continued for sufficient length of time for the statute bar to attach, and it was within the power of the Legislature to repeal the statute of limitations as to cities or to exempt cities from the operation thereof. There is no such thing as a vested right in a statute of limitation, and the Legislature can repeal the statute or suspend its operation before a cause of action is barred under it. *Dyer* v. *Gill,* 32 Ark. 410; *Pearsall* v. *Kenan,* 79 N. C. 472, 28 Am. Rep. 336; *Hill* v. *Boyland,* 40 Miss. 618; *Smith* v. *Tucker,* 17 N. J. L. 82; 8 Cyc. 921; 25 Id. 988." So here, the possession had not continued for a sufficient period of time for the statute bar to attach when the 1945 Act became effective and appellees have no vested right in the statute.

We conclude that the trial court erred in dismissing appellant's complaint and cancelling the sale to the improvement district and conveyances based thereon. The decree is accordingly reversed and the cause remanded for further proceedings not inconsistent with this opinion.