On Application for Rehearing

PITTMAN, Judge.
This court’s opinion of March 30, 2012, is withdrawn, and the following is substituted therefor.
Brenda F. Campbell and her son, C.W. Campbell, appeal from a judgment in favor of Bank of America, N.A. (“Bank of America”), in an ejectment action. We affirm.

Facts and Procedural History

The Jefferson Circuit Court’s judgment recites the following facts:
“The parties entered into a mortgagor/mortgagee relationship based on a mortgage and note, which originated on June 10, 1998. Subsequently, the [Campbells] experienced financial difficulties, and the loan was accelerated in 2004 as a result of default for nonpayment. Over the next two years, the evidence shows that [Bank of America] initiated a number of loss-mitigation procedures as well as other actions designed to help the [Campbells] avoid foreclosure. These actions were unsuccessful, and although [Bank of America] set a date for a foreclosure sale in late 2006, the [Campbells] stayed the sale by filing a Chapter 13 bankruptcy petition. Over the next two years, numerous bankruptcy petitions were filed, further delaying foreclosure proceedings. [Bank of America] was granted relief from the stay of the foreclosure sale in June of 2008, and notice of the sale was again given to the [Campbells]. The foreclosure sale took place on September 3, 2008, at which time [Bank of America] took title.
“At trial, the [Campbells] did not dispute the fact that they were in default; rather, they argued that [Bank of America] failed to comply with [United States Department of Housing and Urban Development] regulations regarding loss-mitigation procedures, and that the foreclosure sale was therefore wrongfully initiated. Specifically, the [Campbells] alleged that [Bank of America] was guilty of noncompliance by failing to both 1) offer all possible loss-mitigation programs to [them] before beginning foreclosure proceedings, and 2) reinitiate loss-mitigation efforts after the relief from stay was granted and before foreclosure proceedings were resumed.”
Following a bench trial, the circuit court entered a judgment determining that the United States Department of Housing and Urban Development (“HUD”) loss-mitigation procedures were mandatory, that Bank of America had substantially complied with those procedures, and that Bank of America had established its right to eject the Campbells from the property. The Campbells filed a timely postjudgment motion and requested a hearing on that motion. The circuit court set a date for a hearing, but it denied the motion before the hearing was held. The Campbells timely appealed. The supreme court subsequently transferred the appeal to this court pursuant to Ala.Code 1975, § 12-2-7(6).

*494
Standard of Review

“ ‘ “Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” ’ Pollard v. Unus Props., LLC, 902 So.2d 18, 23 (Ala.2004) (quoting American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala.1997)). ‘However, as to issues of law, ... “ ... our review is de novo.” ’ Padgett v. Conecuh County Comm’n, 901 So.2d 678, 685 (Ala.2004) (quoting Alfa Mut. Ins. Co. v. Small, 829 So.2d 743, 745 (Ala.2002)).”
Weeks v. Wolf Creek Indus., Inc., 941 So.2d 263, 268-69 (Ala.2006).

Discussion

I.
The Campbells argued in the circuit court and they now maintain on appeal that Bank of America’s alleged noncompliance with HUD loss-mitigation alternatives to foreclosure constitutes a defense to a foreclosure action. An ejectment action following a nonjudicial foreclosure, however, is not a “foreclosure action,” and a defense in such an action asserting errors in the foreclosure process is a collateral attack on a foreclosure. See Dewberry v. Bank of Standing Rock, 227 Ala. 484, 493, 150 So. 463, 470 (1933) (characterizing the action in Jones v. Hagler, 95 Ala. 529, 10 So. 345 (1891), in which the plaintiff sought possession of certain property he had purchased from a trustee, who had sold the property pursuant to a power of sale in a deed of trust, and in which the defendant had asserted irregularities in the sale, as “a statutory action in the nature of ejectment — an indirect or collateral attack upon the foreclosure of real and personal property sold by a trustee, under the power [of sale in a deed of trust]” (some emphasis in original; some emphasis added)). Accord Pinkert v. Lamb, 215 Ark. 879, 883, 224 S.W.2d 15, 17 (1949) (stating that an ejectment action is a “collateral attack by appellees on the ... foreclosure decree and sale ..., and the burden [is] on them to prove such defects therein as would render the sale and decree void”); Dime Sav. Bank, FSB v. Greene, 2002 Pa.Super. 392, 813 A.2d 893, 895 (2002) (stating that “[a]n ejectment action is a proceeding collateral to that under which the land was sold” and that, “where it is claimed that [an] underlying default judgment [in a judicial-foreclosure action] is merely voidable, that claim will not be entertained because such a judgment can not be reached collaterally”).
In a direct attack on a foreclosure — that is, an action seeking declaratory and injunctive relief to halt the foreclosure sale before it occurs see, e.g., Ferguson v. Commercial Bank, 578 So.2d 1234 (Ala.1991); Bank of Red Bay v. King, 482 So.2d 274 (Ala.1985); and Woods v. SunTrust Bank, 81 So.3d 357 (Ala.Civ.App.2011), or an action to set aside the sale after it has occurred, see, e.g., Beal Bank, SSB v. Schilleci, 896 So.2d 395 (Ala.2004); Kelly v. Carmichael, 217 Ala. 534, 536, 117 So. 67, 69 (1928); and Browning v. Palmer, 4 So.3d 524 (Ala.Civ.App.2008) — any circumstance in the foreclosure process that would render the foreclosure sale void or voidable may be asserted. In a proceeding involving a collateral attack on a foreclosure, however, only those circumstances that would render the foreclosure sale void may be raised as an affirmative defense.
“[T]he true distinction between void and voidable acts, orders, and judgments, is, that the former can always be assailed in any proceeding, and the latter, only in a *495 direct proceeding.” Alexander v. Nelson, 42 Ala. 462, 469 (1868). See, e.g., Carlton v. Owens, 443 So.2d 1227, 1231 (Ala.1983) (stating that “[t]he only remedy available to a defendant subject to a voidable judgment is a direct appeal from that judgment; a collateral attack is not allowed”); City of Dothan v. Dale Cnty. Comm’n, 295 Ala. 131, 324 So.2d 772 (1975) (holding that, because city’s annexation of county land was, at most, voidable, opponents could not attack the annexation in a collateral proceeding); 23 Am.Jur.2d Deeds § 162 (2002) (stating that “[a] voidable deed must be attacked, if at all, directly, but a deed that is void may be collaterally attacked by anyone whose interest is adversely affected by it” (footnote omitted)).
One commentator has identified three types of flaws in the foreclosure process: those that will render the foreclosure sale void; those that will render the sale merely voidable; and those that are insignificant.
“[Wjhen the power [of sale in a mortgage] is exercised in violation of the laws or of the security instrument terms, questions arise as to whether compliance with the laws or instrument provisions is a prerequisite for the exercise of the power so that the purported sale is utterly void, or whether the violation is merely sufficiently egregious as to produce a voidable sale, or whether it is so insignificant as to have no impact on the sale.”
“Courts frequently speak of flaws in [nonjudicial-foreclosure] sales so serious that they produce a void sale.... What the courts mean in denominating a sale as void is that adversely affected parties may have a sale set aside even though the property passed into the hands of a bona fide purchaser. In this sense of the term, there are very few void sales. Most of the cases in which a sale to a bona fide purchaser was set aside involved sales by trustees or mortgagees who lacked the power to sell.”
12 Thompson on Real Property §§ 101.04(c)(2) and 101.04(c)(2)(i) at 401-02 (Thomas ed.1994) (footnotes omitted).
“Where a defect is not so egregious as to make the sale utterly void but not so inconsequential as to be overlooked, the sale will be voidable; that is, it can be set aside at the request of an injured party so long as the legal title has not moved to a bona fide purchaser. This follows from the traditional common law rule that a subsequent bona fide purchaser of a legal title takes free of hidden equities. The right of an injured party to set aside a deed because of flaws that produce only a voidable title is an equitable right cut off by transfer to a bona fide purchaser.”
Id., § 101.04(c)(2)(ii) at 403.
In Alabama, the following circumstances may render a foreclosure sale void: (1) when the foreclosing entity does not have the legal right to exercise the power of sale, as, for example, when that entity is neither the assignee of the mortgage, Sturdivant v. BAC Home Loans Servicing, LP, [Ms. 2100245, December 16, 2011] — So.3d - (Ala.Civ.App.2011), nor the holder of the promissory note, Perry v. Federal Nat’l Mortg. Ass’n 100 So.3d 1090 (Ala.Civ.App.2012), at the time it commences the foreclosure proceedings; (2) when “the debt secured by the mortgage was fully paid prior to foreclosure,” Lee v. Gaines, 244 Ala. 664, 666, 15 So.2d 330, 331 (1943); (3) when the foreclosing entity failed to give notice of the time and place of the foreclosure sale, Sanders v. Askew, 79 Ala. 433 (1885), but see Kelley Realty Co. v. McDavid, 211 Ala. 575, 577, 100 So. 872, 873-74 (1924) (stating that “a distinction must be made between cases *496 where there is no sort of compliance with the requirement of advertisement or other notice of the sale, and cases where there is actually given some notice of the nature required, sufficient to give public information of the pendency and date of the sale, though it be ever so defective or incomplete,” and that “[i]n the latter class of cases the foreclosure sale will not be void, but voidable only to the election of the mortgagor, properly and seasonably asserted”); and (4) when the purchase price paid is “ ‘so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside,’ ” Hayden v. Smith, 216 Ala. 428, 430,113 So. 293, 295 (1927).
No court has ever held that a mortgagee’s failure to comply with HUD loss-mitigation procedures renders a foreclosure sale void. The courts of other jurisdictions have held either (1) that the HUD regulations are conditions precedent that must be complied with before a mortgagee has the right to foreclose on a HUD-insured property and, therefore, that the mortgagee’s noncompliance can be asserted as an affirmative defense to a judicial-foreclosure action, see, e.g., Lacy-McKinney v. Taylor, Bean & Whitaker Mortg. Corp., 937 N.E.2d 853, 864 (Ind.Ct.App.2010); or (2) that a mortgagee’s failure to comply with HUD regulations may be asserted as an equitable defense in a pre-foreclosure action seeking injunctive relief to forestall a foreclosure sale or in a post-foreclosure action to set aside the sale, see, e.g., Wells Fargo Home Mortg., Inc. v. Neal, 398 Md. 705, 922 A.2d 538 (2007) (holding that because foreclosure is an equitable remedy, a mortgagor may assert the equitable defense of the mortgagee’s failure to engage in the loss-mitigation procedures mandated by federal regulations and a court may prohibit a foreclosure sale until the mortgagee has complied with those regulations). Because an ejectment action following a nonjudicial foreclosure is not a judicial-foreclosure action, or an action for injunctive relief to forestall a foreclosure, or an action to set aside a foreclosure sale, the Campbells may not assert Bank of America’s alleged failure to comply with loss-mitigation procedures as a defense in an ejectment proceeding. We need not address whether the circuit court’s factual determination — that Bank of America had substantially complied with the HUD-mandated loss-mitigation procedures — is “clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence,” Weeks, supra. Instead, we affirm the circuit court’s judgment, as a matter of law, on another, more fundamental, basis: that the irregularity of which the Campbells complain, which irregularity might render the foreclosure sale merely voidable, may not be asserted as a defense to an ejectment action.
In Coleman v. BAC Servicing, 104 So.3d 195, 206 (Ala.Civ.App.2012),[1] the mortgagor argued that the foreclosing entity’s failure to explore loss-mitigation measures was a defense to an ejectment action. This court stated:
“In support of her argument, Coleman cites a number of decisions from other jurisdictions indicating that the failure to explore loss-mitigation actions as an alternative to foreclosure is an equitable defense to a foreclosure action. The *497 cases upon which Coleman relies do, in fact, contain such statements, but the statements are in the context of judi-daZ-foreclosure actions by mortgagees, or in pre-foreclosure actions by mortgagors seeking declaratory or injunctive relief, not in the context of nonjudicial-foreclosure actions pursuant to a power of sale in a mortgage instrument or post-foreclosure ejectment actions. See, e.g., Federal Nat’l Mortg. Ass’n v. Moore, 609 F.Supp. 194 (N.D.Ill.1985) (judicial foreclosure); ABN AMRO Mortg. Group, Inc. v. Tullar, 770 N.W.2d 851 (Iowa Ct.App.2009) (table) (decision without a published opinion) (judicial foreclosure); Wells Fargo Home Mortg., Inc. v. Neal, 398 Md. 705, 922 A.2d 538 (2007) (pre-foreclosure action by mortgagor seeking declaratory and injunctive relief); and Federal Land Bank of St. Paul v. Overboe, 404 N.W.2d 445, 449 (N.D.1987) (judicial foreclosure). ‘[I]t is generally recognized under Alabama law that a power of sale given under a mortgage affords the mortgagee an additional and more speedy remedy for recovery of the debt.’ Johnson v. Shirley, 539 So.2d 165, 168 (Ala.1988) (citing Paint Rock Props, v. Shewmake, 393 So.2d 982, 984 (Ala.1981)). In the absence of a statute or controlling authority from our supreme court to the contrary, we conclude that the failure of a foreclosing entity to comply with HUD or [United States Department of Veterans Affairs] loss-mitigation requirements may not be raised as a defense to an ejectment action following a nonjudicial foreclosure.”
104 So.3d at 206. In the present case, the Campbells cite the same authorities that were cited and distinguished in Coleman. Perhaps recognizing the distinction made in Coleman, the Campbells cite an additional, unreported California decision for the proposition that “a property owner facing a nonjudicial foreclosure [may] assert a lender’s failure to apply the mandatory loss mitigation procedures” as a defense. Ghervescu v. Wells Fargo Home Mortg., (No. E041809, March 13, 2008) (Cal.Ct.App.2008) (unpublished). Gherves-cu does not support the position that a loss-mitigation defense may be asserted in an ejectment action following a foreclosure. Ghervescu was not an ejectment action; the mortgagor in that case sought an injunction to restrain delivery of the trustee’s deed and to set aside a foreclosure sale. The California Court of Appeals stated:
“We see no reason that a property owner facing a nonjudicial foreclosure should not be able to assert a lender’s failure to apply the mandatory loss mitigation procedures defensively, either to preclude or to set aside a foreclosure sale. Where no sale has taken place, a court may preclude the sale until the lender complies with the [Federal Housing Administration’s] loss mitigation procedures. Or, if the sale has taken place, the court may set the sale aside.... ”
A. The Campbells contend that, unlike the mortgage instrument at issue in Coleman, their Federal Housing Administration (“FHA”) mortgage contract “has specific provisions incorporating the [HUD] regulations and specific provisions which prohibit foreclosure if federal law and regulations are not followed.” The Camp-bells’ mortgage contract states in ¶ 9(d):
“Regulations of HUD Secretary. In many circumstances, regulations issued by the Secretary will limit Lender’s rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.”
*498 In Wells Fargo Home Mortgage, Inc. v. Neal, supra, a leading ease on the issue of a mortgagor’s ability to assert the mortgagee’s noncompliance with HUD loss-mitigation regulations, Neal, the mortgagor, filed a pre-foreclosure action seeking in-junctive relief to block the foreclosure sale and damages for an alleged breach of contract based on the loan servicer’s asserted violation ¶ 9(d) of the FHA form mortgage contract (which paragraph is identical to the corresponding provision in the Camp-bells’ mortgage contract). Maryland’s highest court held that the mortgagor “may not advance, as an affirmative cause of action, a State law contract claim based on an asserted breach of the HUD regulations alluded to in his FHA form deed of trust, but may raise a violation of the regulations in pursuit of an injunction blocking foreclosure.” 398 Md. at 711, 922 A.2d at 541. In deciding that the mortgagor had no private cause of action against the mortgagee for a violation of ¶ 9(d), the Maryland court looked to 24 C.F.R. § 203.500, which “provides that noncompliance with the FHA mortgage servicing regulations empowers the Secretary of HUD to impose a ‘civil money penalty, ... or withdrawal of HUD’s approval of a mortgagee.’ ” 398 Md. at 719, 922 A.2d at 546. The court concluded that such an “enforcement scheme comports with the notion that the regulations enacted pursuant to the [National Housing Act of 1934, 12 U.S.C. § 1701 et seq.,] were intended to govern the relationship between the mortgagee and the government rather than, as Neal would have it, the mortgagee and the mortgagor.” Id. The court explained:
“The overall purpose of the FHA mortgage insurance program is to encourage leading lenders, in exchange for a government guarantee of the loan, to extend mortgages to those carrying higher credit risks. The regulations setting forth the rules and procedures for the program, including the loss mitigation regulations pointed to by Neal and alluded to in paragraph 9(d) of the deed, address how participating lenders are to conduct their activities. Thus, the regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee....
“The language of the regulations bear this out. With respect to mitigating losses, ‘[m]ortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department.’ 24 C.F.R. § 203.501. The emphasis on reducing the possible losses to HUD, rather than the mortgagor, demonstrates that the regulations exist primarily to govern the relationship between the government and the mortgagee. This is logical in light of the fact that HUD, by guaranteeing the mortgages under the program, has a considerable stake in the administration of the insured mortgages. Therefore, it uses the regulations to protect its interests and manage the program. Section 203.502(a) of Title 24 of the Code of Federal Regulations also illustrates this point by declaring that mortgagees and servicers are ‘fully responsible to the Secretary for proper servicing.’ Notably, the regulation does not address that the mortgagees’ and servicers’ are responsible to the mortgagors.”
398 Md. at 719-20, 922 A.2d at 546-47. Accord Moses v. Banco Mortg. Co., 778 F.2d 267, 272 n. 2 (5th Cir.1985); Hayes v. M & T Mortg. Corp., 389 Ill.App.3d 388, 391, 329 Ill.Dec. 440, 906 N.E.2d 638, 642 (2009).
*499 Neal argued that he had no effective opportunity to assert a noncompliance defense in Maryland because, he said, the jurisdictions that had recognized such a defense had considered it an equitable one to be raised in a judicial-foreclosure proceeding and, he said, judicial foreclosures were rare in Maryland, with most foreclosures being based on the power-of-sale provisions in a mortgage instrument. The Maryland court rejected that argument, stating: “[W]e are of the opinion that the violations of the HUD mortgage servicing regulations alleged ... by Neal may be asserted effectively as an affirmative defense within the injunctive relief apparatus provided in Rule 14-209(b)(l), [Md. Rules, ‘Injunction to Stay Foreclosure’].” 398 Md. at 727, 922 A.2d at 551 (footnote omitted).
Neal had, in fact, utilized the very avenue of relief to which the Maryland court alluded. In the present case, the Camp-bells had the same avenue of relief available to them. As previously discussed, Alabama recognizes that an affirmative defense to an allegedly void or voidable foreclosure may be asserted in both pre-fore-closure actions to block a foreclosure sale see, e.g., Ferguson v. Commercial Bank, supra; Bank of Red Bay v. King, supra; and Woods v. SunTrust Bank, supra; and in post-foreclosure actions to set aside a foreclosure sale see, e.g., Beal Bank, SSB v. Schilleci, supra; Kelly v. Carmichael, supra; and Browning v. Palmer, supra. Alabama law does not, however, recognize that an affirmative defense to an allegedly voidable foreclosure sale may be asserted in a collateral proceeding such as an ejectment action.
B. The Campbells cite Berry v. Deutsche Bank National Trust Co., 57 So.3d 142 (Aa.Civ.App.2010), and Hawkins v. LaSalle Bank, N.A., 24 So.3d 1143 (Aa.Civ.App.2009), overruled on another ground, Berry, supra, as standing for the proposition that a mortgagor may raise irregularities in the foreclosure process as an affirmative defense to an ejectment action. Berry and Hawkins cannot be read so broadly. Not all irregularities in the foreclosure process, but only those irregularities that would render the foreclosure sale void, may be raised as affirmative defenses to an ejectment action.
In Berry, a majority of this court reversed a summary judgment in favor of the mortgagee, holding that there was a genuine issue of material fact as to whether “the foreclosure sale was invalid on the ground that the price realized at the foreclosure sale was so low in relation to the market value of the property as to shock the conscience, which would constitute an affirmative defense to [the mortgagee’s] ejectment claim.” 57 So.3d at 149. That holding is consistent with the general principle previously discussed that, if the purchase price is so inadequate as to shock the conscience and raise a presumption of fraud, the inadequacy is a circumstance that may render the foreclosure sale void in Aabama. See Hayden v. Smith, supra.
In Hawkins, this court held that there was a genuine issue of material fact as to whether the collective sale at foreclosure of three parcels of land hampered the mortgagor’s ability to redeem the one parcel on which he was residing. Our opinion analyzed a long line of Aabama cases (a) indicating that a sale in parcels or lots is desirable because it “ ‘opens a field to a greater number of bidders, is conducive to a better price, tends to prevent odious speculation upon the distress of the debtor, and enables him to redeem some of the property without being compelled to redeem it all,”’ Hawkins, 24 So.3d at 1149 (quoting J.H. Morris, Inc. v. Indian Hills, Inc., 282 Aa. 443, 455, 212 So.2d 831, 843 (1968)), and (b) holding, for the most part, *500 that an en masse sale that causes injury to the mortgagor violates the mortgagee’s duty of fairness and good faith in executing the power of sale and is, therefore, sufficient to invalidate the sale and the foreclosure deed. But see Rudisill v. Buckner, 244 Ala. 653, 655, 15 So.2d 333, 334-35 (1943) (stating that, “[i]n the absence of [a] statute to the contrary, the effect of a sale of mortgaged property at foreclosure under the power of sale in the mortgage en masse or en bloc under circumstances where it is to the interest of the mortgagor debtor to have it sold in separate parcels or tracts, is not to render the sale void, but irregular and voidable on direct attack”). In Hawkins, we concluded that, if the foreclosure sale and foreclosure deed were invalid, then the mortgagee’s assignee had no standing to bring the ejectment action. In Berry, we overruled Hawkins to the extent that it held that the ejectment plaintiffs standing was implicated, and we determined that the alleged invalidity of the sale and the deed constituted an affirmative defense to the ejectment action. Berry, 57 So.3d at 149-50. Hawkins, therefore, is the most recent in a line of Alabama cases that appears to point toward there being a fifth circumstance that will render a foreclosure sale void in Alabama: when an en masse sale injures the mortgagor and violates the mortgagee’s duty of fairness and good faith in executing the power of sale. Accordingly, we conclude that Berry and Hawkins are consistent with the general principle that irregularities in the foreclosure process that would render the foreclosure sale void may be raised as affirmative defenses to an ejectment action.
II.
The circuit court’s failure to hold a hearing on the Campbells’ postjudgment motion was harmless error because the motion had no probable merit and this court has resolved the issues presented therein, as a matter of law, adversely to the Campbells. See Ware v. Deutsche Bank Nat’l Trust Co., 75 So.3d 1163, 1172 (Ala.2011) (citing Hollander v. Nichols, 19 So.3d 184, 197 (Ala.2009); Kitchens v. Maye, 623 So.2d 1082, 1088-89 (Ala.1993); and Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989)).
The judgment of the Jefferson Circuit Court is affirmed.
APPLICATION GRANTED; OPINION OF MARCH 30, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. The opinion on original submission in Coleman was issued on February 3, 2012. Today, we are withdrawing the opinion on original submission in Coleman and substituting a new opinion. The holding and language relied upon from Coleman in this opinion has not changed.